**NATIONAL FEDERATION OF FEDERAL EMPLOYEES and Local 1451, National Federation of Federal Employees, Petitioners,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 80–1708.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1981.

Decided May 29, 1981.

Susan Gilbert, Staff Atty., National Federation of Federal Emp., Washington, D. C., with whom Janet Cooper, Gen. Counsel, National Federation of Federal Emp., Washington, D. C., was on the brief for appellant.

Mary Elizabeth Medaglia, Associate Sol., Federal Labor Relations Authority, Washington, D. C., with whom Robert J. Freehling, Sol., Federal Labor Relations Authority, Washington, D. C., was on the brief for respondents.

Before ROBB and WALD, Circuit Judges and JAMESON *, United States Senior District Judge for the District of Montana.

WALD, Circuit Judge:

Petitioner National Federation of Federal Employees, Local 1451 is the certified bargaining agent for approximately 470 employees of the Naval Training Center in Orlando, Florida. The union seeks review of a decision by the Federal Labor Relations Authority (FLRA) that the employer Naval Training Center has no duty to bargain over a union proposal which states that "[e]ach party will have a minimum of three (3) designated representatives for the purpose of [collective bargaining] negotiations."[1] We affirm.

The employees represented by petitioner are covered under Title VII of the Civil Service Reform Act of 1978 (CSRA), Pub. L.No. 95–454, 92 Stat. 1191. The statute requires the employer to engage in collective bargaining, 5 U.S.C. §§ 7102, 7116, which is defined as "the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees . . . to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees . . . ." 5 U.S.C. § 7103(a)(12). The statutory term "conditions of employment" is defined, in pertinent part, as follows:

> personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions . . . .

5 U.S.C. § 7103(a)(14). The sole question in this case is whether the FLRA correctly determined that the employer has no duty to bargain over the union's proposal that each side have at least three designated representatives during collective bargaining negotiations. Since the employer has made no attempt to restrict or otherwise specify the number of representatives which the union could bring to the bargaining sessions, this proposal must be understood as an attempt by the union to mandate to the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The full proposal reads as follows:

   Each party will have a minimum of three (3) designated representatives for the purpose of negotiations. However, there is no require-ment for attendance of all representatives to be present at any specific negotiating session.

   Decision on Negotiability Appeal, Case No. 0–NG–75, 3 FLRA No. 14 (1980), at Joint Appendix 21.

employer the minimum number of representatives which the employer may designate as representing him in the negotiations. The FLRA held that this union demand was not one affecting the "conditions of employment" of its membership, and thus no duty to bargain over it existed.[2]

The CSRA provides that judicial review of FLRA decisions "shall be on the record in accordance with section 706 [of Title V]." 5 U.S.C. § 7123(c). Section 706, in turn, declares that agency action shall be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). This section has been interpreted on countless occasions as requiring the court to give deference to an agency's interpretation of its enabling statute, especially "when the administrative practice at stake 'involves a contemporaneous construction of a statute by the [agency] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.'" *Power Reactor Development Co. v. Int'l Union of Electrical, Radio & Machine Workers*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961), *quoting Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933). *See also Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Kyle v. ICC*, 609 F.2d 540, 542–43 (D.C.Cir.1979). We are, therefore, normally "bound by the 'principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.'" *Miller v. Youakim*, 440 U.S. 125, 145 n.25, 99 S.Ct. 957, 969 n.25, 59 L.Ed.2d 194 (1979), *quoting Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969).

We note, however, that Representative Ford, a Manager of the CSRA bill, expressed his view on the House floor that "in establishing judicial review we expect that the courts will scrutinize the actions of the Authority with less of the deference given other administrative agencies ... especially ... during the initial years of the Authority when it will have to establish superceding decisions mandated by title VII, departing from the experience with the Federal Labor Relations Council under the [prior] Executive order." 124 *Cong.Rec.* H13610 (daily ed. Oct. 14, 1978). This remark, though not controlling, may indicate that some special scrutiny is required where a petitioner alleges that the FLRA has simply followed old practices and not adopted the revised mandates of the CSRA. In this case, however, we need only apply with care the traditional principles of judicial review appropriate under 5 U.S.C. § 706, discussed *supra.*

Here, we believe that the FLRA properly found that section 7103(a)(14) does not require the employer to bargain over this union proposal. The proposal would require management to designate a particular number of representatives for collective bargaining purposes. These representatives would not be unit employees,[3] but rather

---

**2.** Although we agree with the FLRA's finding that "the number of representatives management chooses to designate to carry out its duty to bargain under the Statute is not a matter directly related to the *conditions of employment*," Joint Appendix at 22, we admit of some confusion as to how the FLRA came to this conclusion. Neither its sparse memorandum decision nor its oral presentation before this court provided a clear, persuasive rationale. The fact that non-unit personnel were designated to serve as the employer's bargaining representatives apparently played an important part in the Authority's decision. We do not believe, however, that the status of management's representatives as non-unit personnel is decisive on the issue in this case. Instead, we affirm simply on the ground that the statutory scheme of the CSRA permits management unilaterally *to select the number of representatives it will designate* for collective bargaining purposes.

**3.** Under 5 U.S.C. § 7103(a)(2), the definition of "employee" specifically "does not include ... a supervisor or a management official[.]" *See generally* 5 U.S.C. § 7112(b) (precluding personnel officers and others administering the labor relations act from being part of any bargaining unit).

representatives of management, responsible for presenting and advocating its position during negotiations. The number of representatives management chooses to designate to carry out its duty to bargain is simply not a matter properly included under the definition of "conditions of employment" concerning which management must negotiate.

Our conclusion is confirmed by 5 U.S.C. § 7131 which specifies the conditions and number of employees who shall receive "official" (paid) time to engage in activities concerning labor-management relations.[4] This section of the Act plays a decisive role in this dispute, for it is clear from petitioner's reply brief that its motivation for this proposal stems from its desire to obtain *paid time* for as many of its bargaining representatives as possible. The legislative history of section 7131, however, makes it crystal clear that Congress wished to limit the number of union representatives who had to be paid for their representation time by pegging their number to the number of agency representatives, *a number which the agency would designate.*

Section [7131(a)] provides that employees representing an exclusively recognized or certified labor organization in the negotiation of a collective bargaining agreement ... are authorized official [paid] time for that purpose during the time the employees would otherwise be in a duty status. *The number of employees for whom official time is authorized may not exceed the number of persons designated by the agency as representing the agency in the subject negotiations.*

H.R.Rep.No.95–1403, 95th Cong., 2d Sess. 58 (1978) (emphasis supplied). To permit the union to bargain over the number of representatives management shall designate for collective bargaining would utterly confound the intention of the drafters of section 7131(a), and weaken the device they crafted to limit paid time for union negotiators.[5] The decision of the FLRA is therefore

*Affirmed.*

4. 5 U.S.C. § 7131(a) provides:

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in a duty status. *The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals designated as representing the agency for such purposes.* [Emphasis supplied]

5. We note that 5 U.S.C. § 7131(d) provides:

(d) Except as provided in the preceding subsections of this section—

(1) any employee representing an exclusive representative, or

(2) in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative,

shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

We need not decide here whether this subsection permits the agency and the union mutually to agree to provide additional union representatives (beyond the number paid under subsection 7131(a)) with official time for negotiating a collective bargaining agreement. *See generally* 124 *Cong.Rec.* H13610 (daily ed. Oct. 14, 1978) (remarks of Rep. Ford); 124 *Cong.Rec.* H9650 (daily ed. Sept. 13, 1978) (remarks of Rep. Ford).