UNITED STATES DEPARTMENT OF AGRICULTURE, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

and

The American Federation of Government Employees, AFL–CIO, Intervenor/Respondent.

No. 81–1948.

United States Court of Appeals, Eighth Circuit.

Submitted March 9, 1982.

Decided Aug. 9, 1982.

Rehearing and Rehearing En Banc Denied Sept. 14, 1982.

J. Paul McGrath, Asst. Atty. Gen., William Kanter, Douglas Letter, Attys., Appellate Staff Civ. Div., Dept. of Justice, Washington, D. C., for petitioner.

Robert J. Freehling, Sol., Elizabeth Medaglia, Associate Sol., Ellen Stern, Atty., Federal Labor Relations Authority, Washington, D. C., for respondent.

Charles A. Hobbie, Staff Counsel, Mark D. Roth, Asst. Gen. Counsel, James R. Rosa, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D. C., for intervenor/respondent.

* Judge Henley assumed senior status on June 1, 1982.

1. Official time in this context means paid time. *National Federation of Federal Employees v.*

Robert M. Tobias, Gen. Counsel, John F. Bufe, Deputy Gen. Counsel, William F. White, Sean J. Rogers, Associate Gen. Counsel, Cary P. Sklar, Asst. Counsel, National Treasury Employees Union, Washington, D. C., for amicus curiae.

Before HEANEY, BRIGHT and HENLEY*, Circuit Judges.

BRIGHT, Circuit Judge.

This case reaches this court on a petition to review and cross-application for enforcement of a Federal Labor Relations Authority (FLRA) decision finding that the Department of Agriculture (USDA) committed an unfair labor practice. The USDA refused to pay travel expenses and per diem for employees acting as union representatives in collective bargaining negotiations with the USDA. The case presents this court with a narrow issue: whether the Government must pay travel expenses and per diem to federal service employees who represent their unions in contract negotiations with government agencies. We hold that the Government need not make these payments.

## I. *Federal Labor Relations History.*

This case arises under the Civil Service Reform Act of 1978 (the Act), 5 U.S.C. §§ 7101–7135 (Supp. IV 1980). The Act codified the federal service labor relations program previously governed by executive order. We therefore briefly review these orders as background for this decision.

In January 1962, President Kennedy promulgated Executive Order 10988, see 3 C.F.R. 531 (Comp. 1959–63), which governed federal service labor-management relations between 1962 and 1969. Under Executive Order 10988, the granting of "official time" [1] to employees serving as union representatives was solely within the agency's discretion. The Executive Order, however,

*FLRA*, 652 F.2d 191, 194 (D.C.Cir.1981); *see* H.R.Rep.No.95–1403, 95th Cong., 2d Sess. 58 (1978).

did not provide for the payment of travel expenses or per diem.[2] In 1970, Executive Order 11491 became effective, superseding Executive Order 10988. It authorized the Federal Labor Relations Council as the central authority to oversee federal service labor-management relations. Executive Order 11491 provided that employees representing a union in negotiations with management would not receive official time.[3] This provision reflected the belief that an employee works for the labor organization when negotiating an agreement on behalf of a federal employees union. Report of the Federal Labor Relations Council (FLRC Report), Legis.Hist. at 1167.

One year after the issuance of Executive Order 11491, the Federal Labor Relations Council initiated a review and assessment of its operations under the Executive Order. This review resulted in the promulgation of Executive Order 11616, which amended Executive Order 11491 to incorporate the suggested changes. FLRC Report, Legis.Hist. at 1168. Executive Order 11616, which became effective in November 1971, modified the original prohibition on the payment of official time to permit an agency and a union to agree to a reasonable amount of official time for employees representing unions in negotiations. Specifically, an employee could receive up to 40 hours or up to

2. Section 9 of Executive Order 10988 provided:

Solicitation of memberships, dues, or other internal employee organization business shall be conducted during the non-duty hours of the employees concerned. Officially requested or approved consultations and meetings between management officials and representatives of recognized employee organizations shall, whenever practicable, be conducted on official time, but any agency may require that negotiations with an employee organization which has been accorded exclusive recognition be conducted during the non-duty hours of the employee organization representatives involved in such negotiations. [Exec.Order No. 10988, sec. 9, 3 C.F.R. 531 (Comp. 1959 63), reprinted in Subcomm. on Postal Personnel and Modernization of the Comm. on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978 at 1215 (Comm.Print 1979) (Legis. Hist.).]

Interpreting this section, the Comptroller General held that the Executive Order did not contemplate paying travel expenses to employees representing unions in negotiations. Because an agency could require negotiations during non-duty hours, the Comptroller General reasoned that the time spent by the employees did not qualify as official business. 44 Comp. Gen. 617, 618 (1965). The Comptroller General added the following comment:

As reflected in the Executive order such negotiations may contribute to the effective conduct of public business, but we cannot agree that the negotiation duties rendered by an employee representative are official duties or business rendered on behalf of the United States. On the contrary it would seem that such negotiations by employee representatives are primarily in the interest of the employee organization. [Id.]

The Comptroller General later altered its position on payment of travel expenses for employee organization representatives after the Civil Service Commission promulgated technical guidelines concerning reimbursement for travel expenses incurred in connection with negotiations. These guidelines provided:

As a general practice, travel expenses should not be paid to attend negotiation sessions for the purpose of negotiating an agreement. When consultation or special negotiation meetings are called by the agency, the agency has the latitude to pay travel expenses where the particular circumstances justify the payment. An agency, for example, may find that it would be in the primary interest of the Government to hold a meeting at a site selected by the agency and more economical to pay travel costs for the employee organization representatives than it would be to pay travel costs for the agency representatives. [46 Comp.Gen. 21, 21–22 (1966).]

At the time of the previous decision, it noted that no guidelines existed by which to determine whether these expenses could be deemed to have been incurred "primarily in the interest of the United States * * *." Id. at 22. The Comptroller General therefore modified the prior decision to permit payments for travel expenses incurred in accordance with the guidelines. Id.

3. Section 20 of Executive Order 11491 provided:

Solicitation of membership or dues, and other internal business of a labor organization, shall be conducted during the non-duty hours of the employees concerned. Employees who represent a recognized labor organization shall not be on official time when negotiating an agreement with agency management. [Exec.Order No. 11491, sec. 20, 3 C.F.R. 861, 873 (Comp. 1966–70), Legis.Hist. at 1255.]

one-half the time spent in negotiations during working hours.[4] This order eliminated the absolute prohibition on official time to avoid undue hardship on employees who represented the union, but expressly limited the amount of official time "to maintain a reasonable policy with respect to union self-support and an incentive to economical and businesslike bargaining practices." FLRC Report, Legis.Hist. at 1169. Executive Order 11491, as amended, however, did not authorize agencies to pay travel expenses or per diem for employees serving as union negotiators. FLRC Report, Legis.Hist. at 1264. Executive Orders 11636 and 11838 further amended Executive Order 11491, but did not change the provisions at issue here.

In 1978, Congress passed the Civil Service Reform Act of 1978, for the first time codifying the federal service labor relations program. In response to criticism of the Federal Labor Relations Council, Congress established a new body along the lines of the National Labor Relations Board, which it named the Federal Labor Relations Author-ity (FLRA). *See Department of Defense v. FLRA*, 659 F.2d 1140, 1144–45 (D.C.Cir. 1981) (outlining authority of FLRA), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Congress did not specifically authorize travel expenses or per diem for employees acting as union representatives in collective bargaining sessions, stating only that these employees should receive official time "during the time the employee otherwise would be in a duty status." 5 U.S.C. § 7131(a) (Supp. IV 1980).[5]

## II. *Factual Background.*

The parties stipulated to the facts in this case. Local 3748 of the American Federation of Government Employees (Union) represents the bargaining unit, which consists of certain employees of the Department of Agriculture (USDA) located in Fargo, Grand Forks, and Mandan, North Dakota; Brookings, South Dakota; and Palmer, Alaska. Five USDA employees traveled from Mandan and Brookings to Fargo on four occasions in 1980 to participate in negotiations on behalf of the Union. The

---

4. Executive Order 11616 amended section 20 to read:

   Solicitation of membership or dues, and other internal business of a labor organization, shall be conducted during the non-duty hours of the employees concerned. Employees who represent a recognized labor organization shall not be on official time when negotiating an agreement with agency management, except to the extent that the negotiating parties agree to other arrangements which may provide that the agency will either authorize official time for up to 40 hours or authorize up to one-half the time spent in negotiations during regular working hours, for a reasonable number of employees, which number normally shall not exceed the number of management representatives. [Exec. Order No. 11616, sec. 20, 3 C.F.R. 605, 608 (Comp. 1971–75), Legis.Hist. at 1271.]

5. The full text of § 7131 provides:

   (a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter *shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in a duty status.* The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals desig-nated as representing the agency for such purposes.

   (b) Any activities performed by any employee relating to the internal business of a labor organization (including the solicitation of membership, elections of labor organization officials, and collection of dues) shall be performed during the time the employee is a non-duty status.

   (c) Except as provided in subsection (a) of this section, the Authority shall determine whether any employee participating for, or on behalf of, a labor organization in any phase of proceedings before the Authority shall be authorized official time for such purpose during the time the employee otherwise would be in a duty status.

   (d) Except as provided in the preceding subsections of this section—

   (1) any employee representing an exclusive representative, or

   (2) in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative,

   shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest. [5 U.S.C. § 7131 (Supp. IV 1980) (emphasis supplied).]

employees received time off with pay from their usual duties during negotiations, but the USDA refused their request for travel expenses and per diem.

When the USDA refused to reimburse the employees for their travel expenses and per diem, the Union filed an unfair labor practice charge with the FLRA. *See* 5 U.S.C. § 7118 (Supp. IV 1980). The FLRA regional office issued a complaint which it later supplemented with another charge for the same conduct. The complaints were consolidated and set for hearing before an administrative law judge in Fargo, but then were transferred directly to the FLRA. *See* 5 C.F.R. § 2429.1(a) (1980).

On July 15, 1981, after briefing, the FLRA issued its decision finding that the USDA had committed unfair labor practices under sections 7116(a)(1) and (8),[6] by denying travel and per diem payments to USDA employees while they represented the Union in contract negotiations. In reaching this decision, the FLRA relied primarily on an earlier official interpretation in which it held government employees entitled to travel expenses and per diem while representing their union in negotiations. Interpretation and Guidance, 2 FLRA 264, 270 (1979) (Interpretation).

In the Interpretation, the FLRA first noted that section 7131 of the Act requires that employees be granted official (paid) time while negotiating during hours they would otherwise have been on duty status. It conceded that neither the language of the Act, nor the legislative history, directly addressed payment of travel expenses and per diem, but concluded that employees representing the union in collective bargaining nevertheless should receive travel expenses and per diem because they were engaged in the official business of the Government.

The FLRA considered the conclusion compelled by congressional findings that collective bargaining is in the public interest and that it contributes to the effective conduct of public business. *See* 5 U.S.C. § 7101(a) (Supp. IV 1980). Because other government employees traveling on official business received travel expenses and per diem, *see* 5 U.S.C. § 5702 (1976), the FLRA concluded that employees acting as union negotiators should also receive travel expenses and per diem.

The USDA petitioned this court, under 5 U.S.C. § 7123(a), for review of the FLRA's final determination ordering the USDA to pay travel expenses for the five employees involved and to desist from any refusal to make these payments in the future. The FLRA cross-petitioned for enforcement of its order under 5 U.S.C. § 7123(b), while the American Federation of Government Employees (AFGE) intervened to support the FLRA position.[7]

### III. *Discussion.*

In reaching our decision, we consider three areas of inquiry: (1) whether the FLRA construction of the Act, embodied in its Interpretation, is entitled to any deference; (2) whether the legislative history sheds any light on the proper construction of the language of the Act; and (3) whether public policy or other considerations support the FLRA's construction of the Act.

### A. *Standard of Review.*

█ The FLRA correctly contends that our review of its action is limited. The Civil Service Reform Act provides that judicial review of FLRA decisions "shall be on the record in accordance with section 706 [of Title V]." 5 U.S.C. § 7123(c) (Supp. IV 1980). Section 706 states that agency ac-

---

**6.** Under this section, it is an unfair labor practice

    (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

    * * *; or

    (8) to otherwise fail or refuse to comply with any provision of this chapter. [5 U.S.C. § 7116(a)(1), (8) (Supp. IV 1980).]

**7.** The National Treasury Employees Union (NTEU) filed a brief as amicus curiae. The NTEU, the AFGE, and the FLRA advance similar arguments. We will refer to all arguments as if made solely by the FLRA.

tion should be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706 (1976). As the D.C. Circuit recently stated: "[i]f the FLRA's construction of the statute is reasonably defensible, we are not free to reject it merely because we might decide differently if confronted with the question in the first instance." *Department of Defense v. FLRA, supra,* 659 F.2d at 1162 n.121.

This standard, however, does not require that we summarily affirm every FLRA action, especially where, as here, the issue turns on statutory construction.

The construction put on a statute by the agency charged with administering it is entitled to deference by the courts, and ordinarily that construction will be affirmed if it has a 'reasonable basis in law.' *NLRB v. Hearst Publications,* 322 U.S. 111, 131 [64 S.Ct. 851, 860, 88 L.Ed. 1170]; *Unemployment Commission v. Aragon,* 329 U.S. 143, 153–154 [67 S.Ct. 245, 250, 91 L.Ed. 136]. But the courts are the final authorities on issues of statutory construction, *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 385 [85 S.Ct. 1035, 1042, 13 L.Ed.2d 904], and 'are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.' *NLRB v. Brown,* 380 U.S. 278, 291 [85 S.Ct. 980, 988, 13 L.Ed.2d 839]. [*SEC v. Sloan,* 436 U.S. 103, 118 [98 S.Ct. 1702, 1711, 56 L.Ed.2d 148] (1978) (*quoting Volkswagenwerk v. FMC,* 390 U.S. 261, 272 [88 S.Ct. 929, 935, 19 L.Ed.2d 1090] (1968) ).]

Although technically the USDA has invoked this court's jurisdiction to review an FLRA decision that the USDA committed an unfair labor practice, the parties agree that the outcome depends on whether the FLRA correctly interpreted the Act to require those payments. The FLRA maintains that an employee negotiator on "official time," as used in section 7131[8] of the Act, necessarily engages in official business under 5 U.S.C. § 5702.[9] We do not agree.

While we recognize that the FLRA's interpretation of its own statute deserves some deference, here the FLRA's position rests, at least in part, on its interpretation of 5 U.S.C. § 5702, a provision not within the FLRA's enabling statute. It contends that employees representing their unions in collective bargaining engage in official business within the meaning of that provision. Because the FLRA has no special expertise in interpreting section 5702, however, we need not defer to its interpretation. *See Tsosie v. Califano,* 651 F.2d 719, 722 (10th Cir. 1981); *March v. United States,* 506 F.2d 1306, 1316 (D.C.Cir.1974).

### B. *Legislative History.*

■ The parties agree that nothing in the language or legislative history of the Act mentions the payment of travel expenses or per diem. Thus, the FLRA's Interpretation assumes that Congress authorized additional expenditures to cover travel expenses and per diem without making even an oblique reference to that effect. Because we are unwilling to impose additional financial liability on the Government without an affirmative directive from Congress, we prefer the interpretation that does not make the Government liable for these expenses. *See Brookfield Construction Co. v. United States,* 661 F.2d 159, 163–64 (Ct.Cl. 1981).

The FLRA argues that congressional findings that collective bargaining "contributes to the effective conduct of public business," and that "collective bargaining [is] in the public interest," 5 U.S.C. § 7101(a) (Supp. IV 1980),[10] support its conclusion

---

**8.** *See* note 5 *supra.*

**9.** Section 5702 provides for the payment of per diem expenses to "an employee while traveling on official business away from his designated post of duty." [5 U.S.C. § 5702 (1976).]

**10.** Section 7101(a) provides:

The Congress finds that—

(1) experience in both private and public employment indicates that the statutory protection of the right of employees to organize,

that employee negotiators are entitled to travel expenses and per diem. The FLRA also maintains that travel expenses and per diem were not allowed under the prior executive orders because those orders contained no clear statement that collective bargaining was in the public interest. Now, however, Congress has supplied such a statement manifesting its clear intent to allow travel expenses and per diem.

First, the FLRA's position assumes that employees acting as union negotiators must be engaged in official business for the Government, see Interpretation, *supra*, 2 FLRA at 269, because collective bargaining fulfills the purposes enumerated in section 7101(a). Its position, therefore, ignores the difference between the interest of the public at large and the interest of the Government as employer. While collective bargaining is generally in the public interest, employees representing their unions in collective bargaining do not primarily advance the interest of the Government.[11] Instead, employee representation in collective bargaining primarily benefits the employees

and their union, only indirectly benefiting the USDA by contributing to the effective conduct of its business. See 44 Comp.Gen. 617, 618 (1965).[12] For these reasons, we do not consider these congressional statements of intent pertinent.

The FLRA also argues that Congress indicated its desire to allow payment of travel expenses and per diem by rejecting the Senate version of the official time provision, which would have incorporated the official time provision from Executive Order 11491, as amended. That provision allowed the parties to negotiate authorization of official time for up to forty hours or up to one-half the time spent in negotiations during regular working hours.[13] The FLRA reasons that by adopting completely new language, allowing official time for hours spent in negotiations if the employee would otherwise be in a duty status, Congress intended to reject the Executive Order's limitations of official time, including its prohibition on travel expenses and per diem.[14]

bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—

    (A) safeguards the public interest,

    (B) contributes to the effective conduct of public business, and

    (C) facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment; and

    (2) the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government.

Therefore, labor organizations and collective bargaining in the civil service are in the public interest.

**11.** According to the Comptroller General, an activity must be "in the best interest of the Government," 44 Comp.Gen. 188, 190 (1966), or "primarily in the interest of the United States," 46 Comp.Gen. 21, 22 (1966), to qualify as official business under 5 U.S.C. § 5702.

The FLRA maintains that these Comptroller General decisions, which interpreted official time provisions under prior executive orders,

are without effect. It bases its contention on the radical change in the language of official time provisions under prior executive orders and a General Accounting Office decision declaring previous decisions superseded to the extent of any conflict with 5 U.S.C. § 7131. We do not cite these decisions, however, for their precedential value on the allowance of travel expenses and per diem. Instead, these cases set forth the standard for determining "official business" under 5 U.S.C. § 5702, a term nowhere mentioned in 5 U.S.C. § 7131. These decisions, therefore, still carry some weight.

**12.** Indeed, if we were to accept the FLRA's argument that the statements of purpose found in § 7101 are sufficient to make the activity official business under 5 U.S.C. § 5702, we might be forced to compel union funding by the USDA as well because § 7101 also states that labor organizations are in the public interest. See note 10 *supra*. Clearly, Congress did not intend such a result.

**13.** See note 4 *supra* for the full text of that provision.

**14.** Along these same lines, the FLRA maintains that it is not bound by interpretations of official time provisions under the prior executive orders because Congress intended the FLRA to

We find this argument unpersuasive. In the absence of any comment in the legislative history, we cannot know why Congress rejected the Senate version. In addition, any change reflects, at most, a desire to alter the official time provision,[15] indicating nothing about the congressional view of travel expenses and per diem. If anything, congressional silence would point towards its acceptance of prior practice, which did not allow travel expenses and per diem.[16]

### C. *Policy.*

The FLRA argues that providing employee negotiators with travel expenses and per diem would effectuate the purpose of the Act by more nearly equalizing the status of the parties in bargaining.[17] It observes that management representatives uniformly receive travel expenses and per diem when engaged in negotiation of a collective bargaining agreement on behalf of the agency. It argues that Congress indicated its intent that similar prerogatives be accorded employees serving as union representatives. Interpretation, *supra*, 2 FLRA

at 269–70. In support of its assertion, the FLRA quotes Representative William Clay:

Section 7132(b) of the Udall compromise bars the use of official time for conducting the internal business of a labor organization. The section also lists three such activities reflecting our intention that "internal business" be strictly construed to apply only to those activities regarding the structure and institution of the labor organization. Activities that involve labor-management contacts are not included in this section. Nor is preparation for such activities, such as grievances, bargaining, unfair labor practice proceedings, included within this section. Title VII imposes heavy responsibilities on labor organizations and on agency management. These organizations should be allowed official time to carry out their statutory representational activities just as management uses official time to carry out its responsibilities. [124 Cong.Rec. H9638 (daily ed. Sept. 13, 1978), Legis.Hist. at 934.]

This statement, however, specifically refers to grants of official time only. It makes no

---

take a fresh approach to labor-management relations. It supports its argument by reference to Representative William Clay's statement that "the Authority is in no way bound to the Council's past decisions, even where language in title VII is identical to that in the Executive order." 124 Cong.Rec. H9638 (daily ed. Sept. 13, 1978), Legis.Hist. at 932. A reading of the entire passage, however, indicates that Representative Clay was specifically concerned with the Council's restrictive interpretation of the scope of collective bargaining under the prior Executive Order. Moreover, as already pointed out, it was the Comptroller General, and not the Federal Labor Relations Council, that prohibited payment of travel expenses and per diem, reasoning that the expenses were not generally incurred in the course of official business. The Council, therefore, was not involved in the prior restrictive interpretation that the FLRA would like to discard.

15. We note that even the extent of the congressional alteration of the official time provision is ambiguous. Congress adopted language providing official time "during the time the employee otherwise would be in a duty status." *See* note 5 *supra*. It rejected language allowing parties to agree to authorization of official time "up to 40 hours or * * * up to one-half the time spent in negotiations during regular working hours[.]" *See* note 4 *supra*. While we

need not determine the exact effect of this change, the ambiguity also undercuts the FLRA's position that Congress specifically rejected the restrictive provisions of the prior Executive Order.

16. The FLRA has also argued that there was no need for Congress to address specifically travel expenses and per diem, because "official time" means "duty" status and because travel expenses are automatically permitted when an employee must travel in connection with that duty status. The plain language of § 7131, however, belies this contention because it authorizes official time only when the employee "otherwise would be in a duty status." If official time meant duty status, the quoted phrase would become superfluous. We cannot accept such an interpretation.

17. Along similar lines, the FLRA argues that refusal to provide travel expenses and per diem will result in a disparity of bargaining power because hostile federal managers will be able to extend negotiations, requiring heavy expenditures by the union. We reject this argument because the Act requires both parties to bargain in good faith. *See* 5 U.S.C. § 7114(a)(4) (Supp. IV 1980).

reference to treating union and management representatives alike in every instance and mentions nothing about payment of travel expenses and per diem. Moreover, the Act itself creates inequities between management and labor. For example, union representatives receive official time only while they would otherwise be in a duty status, see 5 U.S.C. § 7131(a) (Supp. IV 1980), while there is no such limitation for agency representatives.[18]

### IV. Conclusion.

Accordingly, we deny enforcement of its order.[19]

HEANEY, Circuit Judge, dissenting.

The majority recognizes that this case turns on the validity of a formal Interpretation and Guidance issued by the FLRA in 1979. See 2 F.L.R.A. 264; maj. op., supra, at 1246, 1247. In my view, this Court lacks jurisdiction to hear the USDA's belated attack on that determination. Moreover, even if jurisdiction is proper, the majority has wrongly substituted its judgment for that of the agency, exceeding the standard of review which it nominally concedes is applicable here. For both of these reasons, I respectfully dissent.

The FLRA, pursuant to 5 U.S.C. § 7105(a)(1), issued a formal interpretive ruling in 1979 to the effect that employees on official time in connection with collective bargaining negotiations are entitled to travel and per diem expenses for such activity. 2 F.L.R.A. 264. Here, there is no dispute that the employees were on such official time—the only issue is the USDA's challenge to the 1979 interpretive ruling. A party aggrieved by a final FLRA order, however, has only sixty days in which to seek judicial review in either the District of Columbia Circuit or the circuit where that party resides or transacts business. 5 U.S.C. § 7123(a). The present claim is thus time-barred and should be dismissed for lack of jurisdiction if the 1979 Interpretation is a final order and the USDA can be held to have been bound thereby.

The 1979 Interpretation was not a unilateral advisory opinion. The agency gave notice of its intention and invited comments. See 44 Fed.Reg. 42778 (July 20, 1979). The USDA submitted comments objecting to payment of travel and per diem expenses, as did the Office of Personnel Management, the General Services Administration, and the Justice Department. It is clear from such comments that the parties understood the FLRA would issue a broad policy interpretation, not an isolated determination. It is equally clear that such formal Interpretations operate in the FLRA as precedents. Cf. 7 F.L.R.A. 70 (December 29, 1981). Under the established concept of finality, the Interpretation was thus a final order[1] and the USDA, having participated therein, was certainly an aggrieved party.

---

18. The FLRA also indicates that it has previously interpreted § 7131(c), which contains the same language, to entitle employees to payment for travel expenses and per diem during proceedings before the FLRA. It argues that this previous interpretation somehow supports its interpretation in this case. We note, however, that no court has passed on the validity of this interpretation. The FLRA's attempt to bootstrap its present interpretation must therefore fail.

19. We note that in a recent opinion, Bureau of Alcohol, Tobacco & Firearms v. FLRA, 672 F.2d 732 (9th Cir. 1982), the Ninth Circuit reached the opposite conclusion. The Second Circuit, however, has recently denied enforcement of an FLRA order requiring the New York National Guard to pay travel expenses and per diem incurred by representatives of civilian employees engaged in collective bargaining with the Guard. Division of Military and Naval Affairs, State of New York v. FLRA, 683 F.2d 45 (2d Cir. 1982).

1. Although the FLRA's enabling statute does not define "final order," the Administrative Procedure Act's definition of an "order" includes a "final disposition * * * declaratory in form." 5 U.S.C. § 551(b). This is precisely what the 1979 Interpretation constitutes. The present case, moreover, shows that the Interpretation operates as a final disposition. When the USDA refused to make travel and per diem payments at one of its regional offices, the union's complaint was transferred to the FLRA's Washington, D. C., office and a rather summary order was issued, relying on the 1979 Interpretation.

Had the USDA and other federal agencies appealed the 1979 *Interpretation*, presumably in the District of Columbia Circuit, there would have been one judicial determination of the ruling's validity—appealable to the Supreme Court—and a uniform result could have been obtained. Instead, the USDA and other federal agencies chose to ignore the 1979 *Interpretation* in favor of circuit-by-circuit attack upon its validity. This is achieved by refusing to comply with the *Interpretation* in specific regional instances and, when such refusal is deemed an unfair labor practice, seeking judicial review in the circuit where the refusal arose. The result of this approach is confusion, contradictory rulings and a tremendous waste of judicial resources. Cases attacking the 1979 *Interpretation* are now pending in several circuits; the Ninth Circuit has upheld the *Interpretation* and this Court now reverses it. *See* maj. op., *supra*, at 1250. Consequently, whether two federal employees will receive travel and per diem, under identical circumstances, now arbitrarily turns on the part of the country in which they work. Even within the same agency, employees will receive or not receive such payments depending upon the regional office to which they are attached.

In my view, this is nonsense. Moreover, it frustrates the congressional intent to achieve a uniform policy toward its employees and is achieved through forum-shopping practices that violate the judicial review provisions of the FLRA enabling statute. Where disputes arise that require case-by-case determination, that Act provides the nearest circuit court as a forum for appeal. Here, however, the only issue is a clear policy question of uniform scope. Federal agencies should not be permitted to participate administratively in that policy formulation, waive their appeal from that determination, and then cause nothing but confusion and contradiction by challenging the determination in circuit after circuit. Accordingly, I would dismiss the USDA's petition for lack of jurisdiction.

I also dissent from the majority's decision on its merits. The Ninth Circuit recently upheld the FLRA's *Interpretation* in a well-reasoned opinion. *See Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 672 F.2d 732, 737–738 (9th Cir. 1982). Here, the majority concedes that the scope of our review is "limited" and that the FLRA action cannot be set aside unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Maj. op., *supra*, at 1247. In my view, regardless of whether one likes the idea of paying travel expenses of federal employees to negotiate with their employer, it seems clear that the FLRA has the authority to make such a determination and that its determination is a reasonable one under the circumstances.

Prior to passage of the 1978 Civil Service Reform Act, which created the FLRA, both "official time" and travel expense questions were governed by a series of executive orders. Some of these orders permitted bargaining on "official time," in the discretion of the employer-agency; some placed a ceiling on such payments; and some totally prohibited bargaining on official time. *See* maj. op., *supra*, at 1243–1245. Travel expense questions obviously would not arise when bargaining could only take place on off-duty rather than official time. When bargaining was at least in part on official time, however, the Comptroller General had construed the executive orders as permitting payment of travel expenses under at least some circumstances. *Id.* at n.2.

The 1978 Civil Service Reform Act must be viewed against this background of conflicting and inconsistent practices. Under the Act, Congress created the FLRA as an independent agency and conferred upon the agency broad regulatory powers relative to labor relations in the federal government. Among other things, the Act also broadly provided that collective bargaining negotiations would be on official time, limited only in that the number of employee negotiators could not exceed the number of employer representatives. The statute and its legislative history are silent on whether travel expenses are payable in connection with such official time activity. The FLRA determined that they were so payable.

The majority appears to argue that congressional silence reflects an intent to reaffirm the prior practice which generally denied travel expenses, and that this Court should not authorize such expenses absent express congressional direction. *See* maj. op., *supra*, at 1248–1249, nn.11–14. Where the prior practice is as inconsistent as it was here, however, can it truly be known which prior practice Congress intended to reaffirm by its silence? The only fair inference is that the question is for the FLRA to decide, subject to reversal only if its determination is unreasonable. Thus, whether this Court should authorize any expenditures is simply not the issue here— the question is the reasonableness of the agency's decision.

The FLRA relied upon the express policies and purposes of the Act and the agency's consistent interpretation of the Act as being intended to equalize the positions of labor and management, subject to various express restrictions. The agency thus approved travel payments because they further the equalization trend, further the express purposes of the Act, and are not barred by any statutory restriction.[2] Such analysis may not be the only plausible interpretation, but it is a reasonable one and is well within the scope of the agency's authority. It must, therefore, be affirmed even under the standard of review recognized by the majority.

The contrary conclusion reached in this case is not required by the statute or its legislative history, which is conceded to be silent. It is not required by prior administrative practice, which is itself erratic and inconsistent. Moreover, it is not justified by the policy arguments relied upon by the

majority, unless this Court is empowered to freely substitute its judgment for that of the agency. In my view, when Congress broadly empowers an independent agency to regulate federal labor relations, courts should not interfere with that agency's policy determination absent a clear showing that the decision is unreasonable, exceeds its authority, or is contrary to law. No such showing has been made here.

---

2. The agency also reasoned by analogy that federal employees traveling on "official time" are generally deemed to be on official business and, as such, are eligible for travel and per diem expenses. *See* 5 U.S.C. § 5702. The majority suggests that because this specific part of the agency's analysis refers to a statute outside the agency's expertise, no deference to the FLRA's decision is warranted. Maj. op., *supra*, at 1247. This ignores the fact that the core of the FLRA's analysis was based on its interpretation of federal labor relations policy, a matter

within its specialized authority and deserving of obvious deference. The majority correctly points out that, in any event, deference does not require "rubber-stamping" decisions that are "inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Maj. op., *supra*, at 1246–1247 (citations omitted). Nowhere is it shown, however, that the FLRA's decision violates any mandate or policy expressed in the enabling legislation.