**INTERNAL REVENUE SERVICE,**
Petitioner,

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

and

**National Treasury Employees Union, Intervenor.**

No. 82–2506.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1983.

Decided Oct. 3, 1983.

Rehearing and Rehearing En Banc Denied Dec. 6, 1983.

James M. Gecker, Reg. Counsel IRS, Chicago, Ill., for petitioner.

Robert J. Englehart, Federal Labor Relations Authority, Washington, D.C., for respondent.

Richard S. Edelman, Nat. Treasury Employees Union, Washington, D.C., for intervenor.

Before BAUER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

BAUER, Circuit Judge.

The issue in this appeal is whether the Internal Revenue Service (IRS) committed an unfair labor practice by refusing to negotiate with the National Treasury Employees Union (NTEU) regarding the design and location of IRS office space. We hold that it did not.

The IRS and the NTEU are parties to a collective bargaining agreement which recognizes the NTEU as the exclusive bargaining agent for IRS employees in Chicago. This controversy arose in 1978 when the IRS reorganized its appeals procedure. As a result, twelve employees were relocated to the Chicago Regional Appeals Office. In order to accommodate these transferred employees, the IRS made plans to modify its existing office space by constructing four conference rooms, reorganizing the legal research and record area, and adding work stations for the new employees. The IRS notified the NTEU of the changes; the NTEU responded with a request to negotiate the substance, impact, and implementation of these changes and a proposal that the IRS either look for new office space or convert the existing space into private offices. Asserting that the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7106, did not require it to negotiate changes in office space, the IRS implemented the changes without union approval.

Thereafter the union filed unfair labor practice charges with the Federal Labor Relations Authority (FLRA). The regional director issued a complaint which alleged that the IRS violated its statutory duty by refusing "to enter into negotiations on the impact and implementation of the decision to change the physical structure of the office and/or location of the office." Complaint, § VI, Appendix at 20.

After a one-day hearing, the Administrative Law Judge ruled that the proposals were nonnegotiable because they concerned the technology of performing work. The FLRA reversed. Relying on *American Federation of State, County and Municipal Employees, AFL–CIO, Local 2477 and Library of Congress (Library of Congress)*, 7 F.L.R.A. No. 89 (1982), *aff'd sub nom. Library of Congress v. Federal Relations Authority*, 699 F.2d 1280 (D.C.Cir.1983), the FLRA held that changes in office space are nonnegotiable only if the agency can show that the office design has a technological relationship to the performance of agency work and that the particular union proposals would interfere with the purpose for which the design was adopted. The FLRA concluded that the IRS had failed to make this showing and, accordingly, reversed the ALJ's holding. It ordered the agency to honor union requests to negotiate the proposed changes and to cease and desist from instituting changes in office design without affording the union an opportunity to negotiate. The IRS's requests for reconsideration were denied.

The IRS contends that the design and location of agency office space is excluded from mandatory bargaining under the management rights provision of the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7106(b)(1). It contends that the FLRA's construction to the contrary is inconsistent with FLRA authority, the legislative history, and the statute's mandate that its provisions be interpreted in a manner consistent with the requirements of efficient government. Alternatively, the IRS argues that even if the statute requires negotiation of office design and location, the changes were not sufficiently material to trigger the duty to bargain. Finally, the IRS argues that the FLRA abused its dis-

cretion in refusing to remand the case to permit the IRS to meet the evidentiary standards established in *Library of Congress.*

The Federal Service Labor-Management Statute, 5 U.S.C. § 7101 *et seq.,* balances the right of public employees to organize and bargain collectively with the need of federal management to exercise exclusive authority to render those decisions necessary to insure effective public services. The Act imposes a broad duty to bargain over conditions of employment, but subjects this duty to express statutory exceptions. 5 U.S.C. §§ 7103(a)(12), 7106. The management rights section enumerates specific rights which are reserved to the federal agency, unless the agency elects to submit these rights to negotiation. 5 U.S.C. § 7106. Any right not specifically reserved to the agency is subject to negotiation, although the agency need not negotiate the substance of management decisions. Sections 7106(b)(2) and (3) impose an obligation to bargain over the impact and implementation of such decisions.

Among the rights reserved exclusively to the agency is the right to determine "the technology, methods, and means of performing work." 5 U.S.C. § 7106(b)(1). The parties maintain that resolution of this controversy turns on whether a change in the physical structure and location of the office is a decision involving the technology, means, and methods of performing work. If it is, the decision is an exercise of a reserved management right and not subject to the duty to bargain. If it is not, the agency must negotiate.

The FLRA rejected the ALJ's conclusion of law that the IRS changes were excepted from the duty to bargain on the basis of a construction of "technology" adopted by the agency after the initial decision in the case was rendered. Applying the *Library of Congress* construction of "technology," the FLRA held that the IRS had failed to show that its office design had any technological relationship to accomplishing or furthering the performance of its work.

Before the enactment of the Federal Service Labor-Management Relations Statute, federal labor relations were governed by Executive Order 11491. Cases decided under this order consistently upheld the agency's right to determine unilaterally the location and design of agency workspace. *National Treasury Employees Union and Chapter 22, National Treasury Employees Union and United States Department of the Treasury, Internal Revenue Service, Philadelphia District,* 4 F.L.R.C. 598 (1976); *National Treasury Employees Union Chapter No. 010 and Internal Revenue Service, Chicago District,* 4 F.L.R.C. 126 (1976). The IRS maintains that by incorporating the Executive Order's language concerning technology almost verbatim into the statute, Congress evidenced its intention to perpetuate the existing law in this area. The IRS contends that the more restrictive interpretation of "technology," adopted by the *Library of Congress* court after the statute had been enacted, is contrary to the statute's language, purpose, and legislative history and not entitled to deference.

We are aware that our standard of review is narrow. FLRA orders must be upheld unless found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706. But while the construction of a statute by the agency charged with administering it is entitled to deference, courts are nevertheless the final authorities on issues of statutory construction. *United States Department of Agriculture v. Federal Labor Relations Authority,* 691 F.2d 1242, 1243 (8th Cir.1982). Thus, "[r]eviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province ...." *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1964).

The parties raise numerous issues of statutory construction many of which are issues of first impression. Resolution of this con-

troversy, however, does not require consideration of all these issues. Accordingly, we decline to review those questions unnecessary to our determination of whether the FLRA order was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. § 706.

The parties believe this appeal turns on the definition of "technology, methods, and means of performing work." We cannot agree, for even if office design and location are properly characterized as conditions of employment which are subject to negotiation, no duty to negotiate has been triggered in this case.

■ The obligation to bargain over conditions of employment arises only when there is a material change in those conditions. *See National Federation of Federal Employees, Local 1363 v. Headquarters, U.S. Army Garrison, Yongsan, Korea,* 8 F.L.R.A. 39 (1982). Neither the Agency nor the union, which submitted an *amicus curiae* brief, cite any cases holding that modification of a large regional office to accommodate some transferred employees constitutes a material change in working conditions. We conclude that the changes initiated by the IRS were minor changes which cannot trigger the duty to negotiate.

Our conclusion is supported by the statute's mandate that its provision be interpreted in a manner consistent with the requirement of efficient government. 5 U.S.C. § 7101(b). Adopting the position that changes of the kind involved here are subject to negotiation would fly in the face of that mandate, preventing the IRS from streamlining its appeals procedure if the change would necessitate employee transfers or office modifications unless or until the union agreed. Logic dictates that Congress did not intend to restrict agency operations in this cumbersome way.

Because our conclusion that the changes in office design and location were not material, and, thus, did not trigger the duty to bargain, we need not address the issues of whether *Library of Congress* correctly construed "technology" or whether the union's proposals are "impact" proposals subject to

negotiation pursuant to 5 U.S.C. § 7106(b)(3). Accordingly, the FLRA's decision and order is set aside and the cross-application for enforcement is denied.

ENFORCEMENT DENIED.

FLAUM, Circuit Judge, concurring.

The FLRA decided in this case that the changes in the IRS's office space must be negotiated in light of the IRS's failure to prove (1) that its choice of office space design has a technological relationship to accomplishing or furthering the performance of its work, and (2) that the NTEU's proposals would interfere with the purpose for which the design was adopted. I join the majority opinion to the extent that it holds that the FLRA's decision is inconsistent with the requirement of effective and efficient government.

Although a reviewing court must give deference to the statutory interpretation of an administrative agency, *see Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1977), a ruling by the FLRA cannot be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Federal Service Labor-Management Statute, 5 U.S.C. § 706. Unlike the dissent, I do not find it necessary to determine whether the FLRA's decision in this case is arbitrary or capricious because I find that it is not in accordance with § 7101(b) of the Federal Service Labor-Management Statute, which states that the provisions of the statute should be interpreted in a manner consistent with effective and efficient government.

The IRS contends that government efficiency requires that a federal agency's management must be free "to make essential decisions regarding the modification of workspace unencumbered by the bargaining obligation." Appellant's Reply Brief at 9. The FLRA, on the other hand, argues that Congress found that the effective conduct of public business is realized through collective bargaining. Appellee's Brief at 34.

Congress briefly addressed the meaning of effective and efficient government prior to the passage of the current Federal Service Labor-Management Statute. During one congressional debate regarding the management rights provision of the statute, Congressman William Ford cited with approval an interpretation of government efficiency that requires an agency to apply a balancing test when declaring a proposal non-negotiable. Such a test must weigh a substantial demonstration of increased costs and reduced effectiveness against such compensating benefits as potential for improved performance, increased productivity, and improved health and safety. 124 Cong. Rec. 29,198 (1978).

In the present case, the IRS's increased costs and reduced effectiveness outweigh any compensating benefits. Prior to the reorganization of the IRS's workspace, the employees in this workspace worked in "open space" areas. The changes instituted by the IRS maintained the open space design, but involved the creation of smaller spaces. The NTEU proposed that a search be undertaken to find new office space utilizing the concept of private offices or, in the alternative, that existing space be converted into private offices, a proposal that would involve the abandonment of the basic open space design. The IRS has indicated that bargaining with regard to office location and design would entail considerable cost. In addition, if bargaining over office location and design can be triggered by the addition of workers into existing office space, the effectiveness of the IRS in improving its operations would be reduced. Furthermore, it is unclear how bargaining over the NTEU's proposals would lead to any significant improvement in performance, productivity, health, or safety. Neither the NTEU nor the FLRA contend that the open space design poses a health or safety hazard, or that private offices would lead to significantly greater performance than the performance achieved with the open space design. Thus, based on the limited facts that the IRS was only modifying an existing office design in an existing office space, and that the union was asking for a total change in design without any showing of potential improvement in performance or productivity, I find that any bargaining over the union's proposals would have been inconsistent with the requirement of effective and efficient government. The FLRA's decision was therefore not in accordance with § 7101(b) of the Federal Service Labor-Management Statute and for that reason should not be enforced.

FAIRCHILD, Senior Circuit Judge, dissenting.

This appeal presents a number of issues involving the Federal Labor Relations Authority's ("FLRA") interpretation of its enabling legislation, the Federal Service Labor-Management Relations Act ("FSLMRA"), 5 U.S.C. §§ 7101–7135 (Supp. III 1979). The majority does not address many of these issues. Judge Bauer holds instead that IRS proposals to accommodate sixty-two workers in space that formerly held fifty workers does not constitute "a material change in conditions of employment" and therefore the FLRA erred in ordering the agency to negotiate over the change. He contends that holding the IRS proposal to be a "material change" would compel cumbersome negotiations whenever an agency proposed "employee transfers or office modifications." Such a result, he suggests, would be contrary to Congress' mandate that FLRA interpret its enabling statute "in a manner consistent with the requirements of an effective and efficient Government." 5 U.S.C. § 7101(b) (Supp. III 1979). Judge Flaum concurs in this last suggestion only, arguing that a balancing of IRS costs with "compensating benefits" on the facts before us require our finding FLRA's bargaining order to be "inconsistent with the requirement of effective and efficient government."

Because I am unable to hold that FLRA's order to negotiate was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706 (1976), I respectfully dissent.

The requirement that a proposal cause a "material change in working conditions" be-

fore a bargaining order will issue was recognized by FLRA in *National Federation of Federal Employees, Local 1363 and Headquarters, U.S. Army Garrison, Yongsan, Korea,* 8 F.L.R.A. 39 (1982). In that case FLRA upheld the denial of a bargaining order over the Army's announced policy to require its employees to pay for services provided by military installations in United States dollars rather than Korean currency. FLRA agreed with General Counsel that because employees earned their salaries in United States dollars the Army's "directive affected no material change in conditions of employment," and no duty arose to bargain over the policy.

There is no indication on this record that IRS argued before the Administrative Law Judge or FLRA that its proposed changes were immaterial; it is unclear then whether the issue is preserved for our consideration on appeal. *See Garment Workers v. Quality Mfg. Co.,* 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 975 n. 3, 43 L.Ed.2d 189 (1975); *Federal Power Com. v. Colorado Interstate Gas Co.,* 348 U.S. 492, 493–501, 75 S.Ct. 467, 468–472, 99 L.Ed. 583 (1955). Assuming the issue is preserved, the *Local 1363* holding is not obviously applicable to the IRS proposals at issue. Neither the facts nor general language of *Local 1363* provides guidance. In that case FLRA specifically found the Army's new policy of accepting only American currency would have no impact on employees who were paid in American dollars. In contrast, there is no question that the IRS proposals to renovate its offices would cause at least some real change in the working conditions of its employees. The Administrative Law Judge found that:

> The management proposals . . . affected the following four areas of the office:
> (1) Office space of four (4) employee work stations along the West perimeter of the office would be displaced to accommodate four conference rooms. The four displaced employees would be squeezed into smaller stations with approximately twelve other employees along the West and North outer perimeters of the office, whose work stations would, likewise, be diminished in size;
> (2) The "Horseshoe Area" on the North side of the office, then containing three Appeals Aids stations and four Appeals Officer stations, would be completely gutted and reorganized to accommodate nine Appeals Officer stations and four stations for Legal Research Assistants in the same amount of space;
> (3) The "Inner Core" area on the South side of the elevator lobby would be reorganized to accommodate three (3) records clerks in addition to the five already located in that space; and
> (4) Three (3) Appeals Aids displaced from the "Horseshoe Area" by changes described in (2) above, would be dispersed to other areas of the office and removed from immediate physical proximity to their supervisors.

Judge Bauer concludes that "the changes initiated by the IRS were minor changes which cannot trigger the duty to negotiate." But it is FLRA that has been entrusted in the first instance "with the responsibility to define the proper subjects for collective bargaining, drawing upon its expertise and understanding of the special needs of public sector labor relations." *Library of Congress v. FLRA,* 699 F.2d 1280 (D.C.Cir.1983). *See* 5 U.S.C. §§ 7105(a)(2)(E), 7117 (Supp. III 1979).

Judge Bauer finds support for his holding that the IRS proposals involve only minor, non-negotiable changes in the FSLMRA's "mandate that its provisions be interpreted in a manner consistent with the requirements of an efficient government." *See* 5 U.S.C. § 7101(b) (Supp. III 1979). Judge Flaum apparently argues that § 7101(b) required FLRA to interpret the FSLMRA as generally precluding bargaining over the IRS proposals at issue in this case. FLRA has by its order, however, indicated that it interprets the FSLMRA as compelling negotiations of the IRS proposals and finds this result to be consistent with effective and efficient government. On appellate review, this court must show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441,

2445, 57 L.Ed.2d 337 (1977) (quoting *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). Accordingly, the Authority's interpretation of the FSLMRA must be deferred to "unless there are compelling indications that it is wrong." *National Federation of Federal Employees, Local 1451 v. FLRA,* 652 F.2d 191, 193 (D.C.Cir.1981). *See also National Treasury Employees Union v. FLRA,* 691 F.2d 553, 557 (D.C.Cir.1982) ("we should adopt [FLRA's] interpretation if it is reasonably defensible and there is no compelling indication of error").

There is no question that imposing a duty to negotiate upon a federal agency may create delays in implementing its policies and additional costs may result. The FSLMRA recognizes, however, that labor organizations and collective bargaining in the civil service are in the public interest. 5 U.S.C. § 7101(a) (Supp. III 1979). The Act leaves it to FLRA "to reconcile collective bargaining with the distinctive needs of government employment." *American Federation of Government Employees, AFL–CIO, Local 2782 v. FLRA,* 702 F.2d 1183, 1185 (D.C.Cir.1983).

The current dispute presented FLRA with the task of reconciling the value of collective bargaining over office alterations having a substantial impact on employees with an agency's need to effect changes in its operation. I am unable to hold that the resolution reached by FLRA in favor of negotiation of the IRS proposals was unreasonable, arbitrary, capricious or otherwise not in accordance with law.

Although the majority did not decide the matter on the IRS contentions, I would also defer to FLRA's determination that the proposed changes were not "technological" in nature, that the union's proposals were within the scope of those changes, and that a remand is not required where IRS already received ample opportunity to present evidence. I therefore respectfully dissent.