**UNITED STATES AIR FORCE, HEADQUARTERS, WARNER ROBINS AIR FORCE LOGISTICS COMMAND, ROBINS AIR FORCE BASE, GEORGIA, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 82–8442.**

United States Court of Appeals,
Eleventh Circuit.

March 26, 1984.

Susan M. Chalker, William Kanter, Civ. Div., Dept. of Justice, David W. Kerber, Major, U.S.A.F., Gen. Litigation Div., Washington, D.C., for petitioner.

Steven H. Svartz, Acting Sol., Robert J. Englehart, Federal Labor Relations Authority, Washington, D.C., for respondent.

Stuart A. Kirsch, Staff Counsel, College Park, Ga., for intervenor American Federation of Government Employees.

Before TJOFLAT and HILL, Circuit Judges, and LYNNE *, District Judge.

JAMES C. HILL, Circuit Judge:

In this case, we must decide whether the Federal Labor Relations Authority (FLRA or Authority) correctly ordered the Department of the Air Force (the Agency or Air Force) to bargain with the American Federation of Government Employees (the Union) about the relative utilization of part-

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

time and full-time employees at Robins Air Force Base. We hold that the FLRA erred in ordering the Air Force to bargain and refuse to enforce the order.

During the course of contract negotiations, the Union submitted the following proposal:

### Employee Utilization

Section E: It is recognized that part-time employees are essential in carrying out the mission of the Employer; however, full-time employees will be utilized to the fullest extent possible. Part-time employees will be utilized only when it is not practical nor prudent to use full-time employees.

The Air Force refused to bargain over the proposal, contending that it deals with a nonnegotiable subject under 5 U.S.C. § 7106 (1982). The Union petitioned the FLRA for review of the Air Force's position under 5 U.S.C. § 7117(c)(1) (1982). The FLRA held the proposal to be a proper subject for negotiation under section 7106(b), which sanctions bargaining over "appropriate arrangements" and "procedural" matters, and ordered the Air Force to bargain. The Air Force now seeks review of the FLRA's decision under 5 U.S.C. § 7123 (1982), and the FLRA seeks enforcement of its order.

The language of the statute provides the starting point for our analysis. Section 7106(a)(2) provides, in pertinent part, that

Subject to subsection (b) of this section, nothing in this chapter shall affect the [agency's authority]

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

(C) with respect to filling positions, to make selections for appointments from—

(i) among properly ranked and certified candidates for promotion; or

(ii) any other appropriate source ....

*Id.* § 7106(a)(2). Section 7106(b) provides, however, that the agency and the Union may negotiate

(1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

*Id.* § 7106(b).

In reviewing the FLRA's construction of this statute, we must defer to its decision if it is supported by a rational basis, or, to phrase the test another way, we will uphold the FLRA's decision absent " 'compelling indications that it is wrong.' " *Veterans Administration Medical Center v. FLRA,* 675 F.2d 260, 262 (11th Cir.1982) (*VA Tampa*) (quoting *National Federation of Federal Employees v. FLRA,* 652 F.2d 191, 193 (D.C.Cir.1981)). Nevertheless, this court must actively review FLRA decisions; we do not exist simply to "rubber stamp" and enforce the FLRA's orders. *See, e.g., Bureau of Alcohol, Tobacco & Firearms v. FLRA,* —— U.S. ——, ——, 104 S.Ct. 439, 440, 78 L.Ed.2d 195 (1983) (FLRA order not enforced); *Volkswagenwerk v. GMC,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

The issue before us today is not a new one; the Court of Appeals for the District of Columbia Circuit has addressed several times the effect of similar bargaining proposals. *See American Federation of Government Employees v. FLRA,* 702 F.2d 1183 (D.C.Cir.1983); *American Federation of Government Employees v. FLRA,* 691 F.2d 565 (D.C.Cir.1982); *National Treasury Employees Union v. FLRA,* 691 F.2d 553 (D.C.Cir.1982); *Department of Defense v. FLRA,* 659 F.2d 1140 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71

L.Ed.2d 658 (1982). The issue presented in this case and in most of the cited cases is whether a proposal is substantive and not subject to negotiation under 7106(a) or procedural [1] and subject to negotiation under section 7106(b). As Judge Wright noted in *Department of Defense,* the distinction can, at times, be elusive.

> There are, on the one hand, cases in which proposals cast in procedural language impinge on substantive management decisions by specifying the criteria pursuant to which decisions must be made. There are, on the other, more nearly "pure" procedures, which have less direct substantive repercussions—for example, procedures for use in determining which employees possess characteristics identified by management as appropriate criteria for choice.

659 F.2d at 1152. Although subsection (b) states that subsection (a) shall not prevent negotiations over procedural matters, *see American Federation,* 702 F.2d at 1185, the explicit relationship between the two subsections does not render less difficult the task of drawing the initial distinction in a given case, *cf. id.* at 1187 (in construing subsection (b)(2) with subsection (a), statute requires court to observe "conventional dichotomy" between substance and procedure).

The Union raises one issue that we must decide before analyzing the facts of this case. In *American Federation,* the court held that the FLRA erred in utilizing a standard that questions whether the rights at issue are "directly related" to substantive rights to decide whether a proposal constitutes an "appropriate arrangement" under subsection (b)(3). *Id.* at 1186. The Union, which has intervened, argues that, because the FLRA relied here on both subsections (b)(2) and (b)(3) and because the legislative history evidences Congress' intent not to adopt the "directly related" standard for any subsection, the FLRA

should have used the "acting at all" standard instead of the "directly related" standard.[2] The "acting at all" standard, used by the FLRA in issuing the order enforced by this court in *VA Tampa,* 675 F.2d at 262, voids only those procedures that would prevent agency management from "acting at all."

■ The *American Federation* court correctly noted that FLRA should apply the "acting at all" standard in subsection (b)(3) cases and the "directly related" standard in subsection (b)(2) cases. We need not repeat here the logical underpinings of the distinction ably set forth by Judge Scalia in *American Federation,* 702 F.2d at 1187, except to note that our decision in *VA Tampa* supports his reasoning. In *VA Tampa,* the Union proposal concerned the staying of a pending personnel action until grievance or arbitration procedures could be concluded. This is clearly an "appropriate arrangement," *see* § 7106(b)(3), as opposed to a procedure under subsection (b)(2). We noted in *VA Tampa* that the FLRA uses both standards, but that "the decision not to use [the "act at all"] standard in 'direct interference' cases cannot invalidate its proper use in the case at hand, an 'indirect effect' case." 675 F.2d at 266; *see also Department of Defense,* 659 F.2d at 1153, 1159.

■ In this case, however, the FLRA properly applied the more stringent standard. The proposal at issue is not one indirectly effecting substantive rights nor is it an "appropriate arrangement for employees adversely affected by the exercise of [management] authority . . . ." 5 U.S.C. § 7106(b)(3). The proposal deals directly with the right of the agency under subsection (a) to "determine the personnel by which agency operations shall be conducted . . . ." To the extent that the FLRA concluded that the proposal is an "appropriate arrangement," we hold that no reasonable basis supports that decision. Subsection (a)

---

1. We use "procedural" here loosely to encompass the various negotiable subjects set forth in all three subsections of section 7106(b).

2. The Authority stated in its order that the proposal "does not *explicitly* relate . . ." as

opposed to "directly relate"; nevertheless, it is clear from the order that the Authority used the "directly related" standard in deciding the case.

clearly states that the agency retains the authority to determine the "personnel by which agency operations shall be conducted" and to hire and fire employees. If this proposal is negotiable as an appropriate arrangement, we cannot envision what would remain for the agency to determine under subsection (a).[3]

By the same reasoning, we cannot comprehend that the proposal is "procedural" under subsection (b)(2). We are not impressed by the contention of the FLRA and the Union that the "current proposal does not bind management in the exercise of the assignment of employees or determine the number and types of employees but simply requires management to justify by a reviewable prudent or practical standard their decision to use part-time employees." Brief of Union at 22. Apparently, the contention is .that while the agency may utilize its discretion in assigning, hiring, and firing employees, it must follow the *procedure* of favoring full-time employees when reasonable. This is not a procedure at all; it is a substantive decisionmaking tool.[4]

We find nothing in the FLRA decision or in the briefs of the parties causing us to doubt our position on this issue. The FLRA opinion states, in pertinent part,

Union Proposal I, on its face, does not explicitly relate to the Agency's decision as to the numbers of employees assigned to an organizational subdivision or to any of the other management rights alluded to by the Agency. Moreover, the Agency has not demonstrated, and the record does not otherwise disclose, in what manner the proposal is integrally related to and thereby determinative of either the numbers of employees assigned to an organizational unit or any of the other management rights alluded to by the

Agency. Rather, the proposal's requirement that part-time employees be utilized only when it is not practical nor prudent to use full-time employees would establish a general, nonquantatitive contractual requirement by which management's use of part-time employees could be evaluated in a grievance by a full-time employee who believes he or she has been adversely affected by the Agency action."

*See, e.g., American Federation of Government Employees, AFL–CIO, Local 1622 and Department of the Army, Fort Meade, Maryland,* 4 F.L.R.A. No. 66 (1980), wherein the Authority found within the duty to bargain under section 7106(b)(3) a proposal which stated, "Hours of Work for employees in the unit will not be reduced without just cause." The agency had alleged the proposal interfered with the agency's right to determine the numbers, types, and grades of employees assigned to any work project or tour of duty under section 7106(b)(1). However, the Authority disagreed, emphasizing that the proposal's general, nonquantative standard was an example of an appropriate arrangement, under section 7106(b)(3), for employees adversely affected by the exercise of a management right.

The Union argues that the FLRA reasoning is not only correct but that it is supported by the legislative history of the management rights section of the statute; the Union and the FLRA also cite numerous decisions allegedly supporting the result reached here by the Authority.

Given the clear language of the statute and the clear effect of the proposal, however, the only logical conclusion in this case

---

**3.** The FLRA here ordered bargaining; therefore, application of the less stringent standard would not have changed the FLRA's decision. And, since this is not an appropriate case for the "act at all" test, we need not, as the Union requests, apply that standard in reviewing the order by assuming that the FLRA employed it.

**4.** We see no distinction in this regard between the proposal at issue here and the one held not negotiable by the Authority in *National Federation of Federal Employees v. Headquarters,*

*U.S. Army Material and Readiness Command,* 3 F.L.R.A. 611 (1980). The proposal in that case required the agency to negotiate with the Union before hiring outside employees instead of in-house employees. The proposal here will result in review by an arbitrator of the agency's decision to hire part-time employees instead of full-time employees. Both proposals substantively infringe on management's section 7106(a) rights.

is that the proposal is not bargainable.[5] Despite the FLRA opinion, a proposal requiring the agency to utilize part-time employees only when full-time employees cannot practically or prudently be used is clearly, in the FLRA's words, "determinative of the numbers of employees assigned to an organizational unit . . . ." We find the contrary opinions of the Authority, such as the one cited in the excerpt above, without rational basis and thus unpersuasive.

Therefore, we refuse to enforce the decision of the FLRA.

---

**5.** The legislative history of the statute is, at best, equivocal. *See American Federation,* 702 F.2d at 1187.