**PATENT OFFICE PROFESSIONAL ASSOCIATION, Petitioner**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY.**

**PATENT AND TRADEMARK OFFICE, DEPARTMENT OF COMMERCE, Petitioner**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY.**

**Nos. 87–1824, 88–1118.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1989.

Decided May 5, 1989.

Peter B. Broida, Washington, D.C., for petitioner Patent Office Professional Ass'n.

Matthew M. Collette, Atty., Civ. Div., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., and William Kanter, Atty., Civ. Div., Dept. of Justice, Washington, D.C., were on the brief, for petitioner Patent and Trademark Office, Dept. of Commerce.

Denise Morelli, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Federal Labor Relations Authority, Washington, D.C., was on the brief, for respondent.

Before MIKVA and RUTH B. GINSBURG, Circuit Judges, and HOGAN,* District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The Patent Office Professional Association ("union") and the Patent and Trademark Office, Department of Commerce ("agency") petition in these consolidated cases for review of a decision and order of the Federal Labor Relations Authority ("Authority") regarding the negotiability of certain collective bargaining proposals relating to employee performance appraisal plans. We uphold the Authority's decision and accordingly deny the petitions for review.

## I.

Federal employee performance appraisal plans are governed by the Civil Service Reform Act of 1978 ("Act"), 5 U.S.C. §§ 4301–4305, and administered via Office of Personnel Management ("OPM") regulations, 5 C.F.R. Part 430. During collective bargaining between the union and the agency under the Federal Service Labor-Management Relations Statute ("Statute"), 5 U.S.C. §§ 7101–7135, the agency declared 14 union proposals non-negotiable. The union, pursuant to section 7117(c) of the Statute, 5 U.S.C. § 7117(c), petitioned the Authority for review of the agency's determinations. As relevant to these petitions for review, the Authority found four proposals nonnegotiable and one proposal negotiable. *See Patent Office Professional Association and Patent and Trademark Office, Department of Commerce,* 29 F.L.R.A. (No. 116) 1389 (1987).

The union, in No. 87–1824, seeks judicial review of the Authority's determination

that four proposals designated 1, 6, 8, and 13 are nonnegotiable. The agency, in No. 88–1118, complains that the Authority erred in holding proposal 3 negotiable. Neither petitioner has sought to intervene in the petition of the other. Although each petitioner seeks review of the same decision, each case raises issues separate from the other.

## II.

Under the Statute, reviewing courts must set aside Authority action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *see* 5 U.S.C. §§ 7123(c), 706(2)(A); *National Treasury Employees Union v. FLRA,* 826 F.2d 114, 121 (D.C.Cir.1987). We accord "considerable deference" to the Authority's interpretation of the Statute, *see Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), and will uphold a negotiability decision if the Authority's construction of the Statute is "reasonably defensible." *Overseas Educ. Ass'n v. FLRA,* 827 F.2d 814, 816 (D.C.Cir. 1987) (citation omitted).

### A. *Proposal 1*

■ Proposal 1 relates to supervisory responsibilities in the development of performance appraisal plans. It states that:

*Section 3.C.* Prior to the establishment or substantive modification of any performance appraisal plan the following procedure will be used:

1. When the proposed performance appraisal plan applies to no more than fifteen employees, *the supervisor* shall hold a meeting with the involved employees so that the employees can provide input on the plan. POPA shall be provided an opportunity to have a representative present at this meeting. The *supervisor* shall make a written report providing reasons for rejecting any suggestions prior to establishment or modification, or negotiations, if the proposal involved ne-

* The Honorable Thomas F. Hogan, of the United States District Court for the District of Colum- bia, sitting by designation pursuant to 28 U.S.C. § 292(a).

gotiable subject matter. [Emphasis in original.] [Only the last sentence is in dispute.]

The Authority held that the first sentence of this proposal is within the agency's duty to bargain, because it is consistent with statutory and regulatory provisions requiring employee participation in the establishment of performance standards. *See* 29 F.L.R.A. at 1391 (citing, *inter alia,* 5 U.S.C. § 4302(a)(2); 5 C.F.R. § 430.204(c)(1)). The Authority found, however, that the third sentence is not within the agency's duty to bargain, because it would require the agency to assign to a supervisor a specific task not otherwise required by law and regulation. *See* 29 F.L.R.A. at 1392 (citing 5 U.S.C. § 7106(a)(2)(B) (management's right to assign work)).

The union challenges this latter determination as contrary to law and regulation. We conclude, however, that there is ample support for the Authority's position. This court has recognized that "the right to determine what work will be done, and by whom and when it is to be done, is at the very core of successful management of the employer's business, whether a private-sector enterprise or the public service operations of a federal agency." *National Treasury Employees Union v. FLRA,* 691 F.2d 553, 563 (D.C.Cir.1982); *see also National Treasury Employees Union v. FLRA,* 810 F.2d 1224, 1227 (D.C.Cir.1987). The Authority has accordingly held that a proposal requiring a particular supervisor to perform specified tasks interferes with management's right to assign work under section 7106(a)(2)(B) of the Statute. *See, e.g., AFGE Local 1858 and U.S. Army Missile Command, the U.S. Army Test, Measurement, and Diagnostic Equipment Support Group, the U.S. Army Information Systems Command–Redstone Arsenal Commissary,* 27 F.L.R.A. 69, 80 (1987) (*"Army Missile Command"*) (finding that a proposal requiring an agency to assign certain investigative and counseling tasks to supervisors interfered with management's right to assign work).

The third sentence of this proposal, which provides that "[t]he *supervisor* shall make a written report," on its face requires the agency to assign a specific work task to a particular management official. Because it dictates who must make the written report, we agree with the Authority that this sentence of the proposal interferes with management's discretion under section 7106(a)(2)(B) of the Statute to select the person who should receive the assignment.

The union argues that the proposal is negotiable because the Act and the OPM regulations make no distinction between employee-supervisor meetings and supervisory reports. The union notes that Congress required agencies, as part of the performance appraisal process, to encourage employee participation, broadly defined, in the development of performance standards. *See* 5 U.S.C. § 4302(a)(2) (performance appraisal systems must "encourage employee participation in establishing performance standards"); 5 C.F.R. § 430.204(c) ("[e]ach appraisal system shall encourage employee participation in establishing performance plans" by means such as discussions between employees and supervisors and employee comments on draft performance plans prepared by supervisors); *see also* Office of Personnel Management, *Federal Personnel Manual* ch. 430, subch. 2–3(d), 2–5. We find, however, that the union's argument is misplaced, for the Authority held only that this proposal interferes with management's right to assign work, not that "employee participation" necessarily includes meetings between employees and supervisors but not reports by supervisors. *See* 29 F.L.R.A. at 1392 (the proposal's defect "is easily cured by deleting the reference to a particular management official") (citing *Army Missile Command,* 27 F.L.R.A. at 81).

Moreover, even assuming that the Authority drew the distinction that the union urges is arbitrary, we are not persuaded that the Authority's decision is unreasonable. There is no doubt that the Act and the OPM regulations generally encourage employees and supervisors to work together to develop performance standards. In upholding the first sentence as negotiable,

however, the Authority determined that the Act and OPM regulations expressly require meetings between employees and supervisors to discuss and develop performance appraisal plans. *See* 29 F.L.R.A. at 1391. By contrast, the Authority found that the Act and OPM regulations do not specifically compel supervisory written reports of the kind contemplated by the union's proposal. Even without deference to the Authority, for the Authority's interpretation of the Act and OPM regulations does not receive *Chevron* deference, *see National Treasury Employees Union v. FLRA*, 848 F.2d 1273, 1275 (D.C.Cir.1988), we uphold the Authority's ruling as neither irrational nor contrary to statutory language or legislative intent.

The union also contends that the Authority's decision is contrary to its own precedent. The union relies primarily on the Authority's prior statement that "[t]he duty to bargain extends to, among other matters, *the form of the employee participation* in the establishment of performance standards. * * * Under section 7106(b)(2) an agency has the duty to bargain on *procedures* which management officials will observe in the development and implementation of performance standards and critical elements; * * *." *National Treasury Employees Union and Department of Treasury, Bureau of the Public Debt*, 3 F.L.R.A. 769, 770 (1980) (emphasis added), *aff'd sub nom. National Treasury Employees Union v. FLRA*, 691 F.2d 553 (D.C.Cir.1982).

We note, however, that management rights, which in that case included the ability to establish critical elements and performance standards, expressly limit the holding in that case. "It is within the duty of the agency to bargain, *consistent with law and regulation,* on aspects of performance appraisal systems other than identification of critical elements and content of performance standards." *Id.* (emphasis added). "[T]he manner in which a particular agency provides for such employee participation is within the agency's discretion and, therefore, within the duty to bargain to the extent that it would not prevent the agency from establishing per-

formance standards and critical elements *pursuant to its statutory rights to direct employees and assign work.*" *Id.* at 778 (emphasis added). Because we agree with the Authority that the third sentence of this proposal interferes with management's right to assign work, we find the Authority's decision in this case consistent with its prior ruling. The union's reliance on other Authority precedent is likewise unavailing, and we accordingly reject the union's claim of inconsistency with Authority precedent.

## B. *Proposal 6*

■ The second proposal at issue, proposal 6, concerns the time period within which management is to review an employee's performance for the purpose of imposing disciplinary action. It provides that:

*Section 16.A. General.* After an employee has completed his probationary year, performance-based disciplinary action shall not be based on short term performance periods. *A performance period is short term unless the performance is averaged over a period of at least twelve consecutive months.* [Only the italicized sentence is in dispute.]

The Authority held that this proposal is inconsistent with a controlling government-wide OPM regulation that permits agencies to take performance-based adverse actions "*at any time* during the performance cycle that the employee's performance in one or more critical elements of the job become unacceptable." *See* 29 F.L.R.A. at 1401 (quoting 5 C.F.R. § 432.203(a) (emphasis added)). The Authority interpreted this regulation as permitting performance-based adverse action whenever an employee's performance falls to an unacceptable level, without assessing that employee's "average" performance over a period of time. *See id.* The Authority ruled that this regulation is a controlling government-wide rule or regulation within the meaning of section 7117(a)(1) of the Statute and accordingly deemed the proposal nonnegotiable. *See id.* at 1401–02.

The union argues that this proposal, intended to ensure that patent examiners are not unfairly penalized for variations in workloads over time, does not prevent management from taking disciplinary action "at any time," because the agency may nonetheless *begin* to take disciplinary action at any time. Moreover, according to the union, this proposal concerns the definition of unacceptable performance, not the timing of the disciplinary action once unacceptable performance has been assessed.

We think it reasonable for the Authority to assume, however, that if an employee has been generally performing satisfactorily and suddenly (or as a result of a promotion) begins to perform unsatisfactorily, then under the "averaging" provision of this proposal the employee might still be considered a satisfactory worker, and hence not subject to performance-based adverse action, even though her current performance is unsatisfactory. We therefore agree with the Authority that disciplinary action will at least in some cases be delayed and that the proposal accordingly limits the agency's discretion under a controlling government-wide rule or regulation within the meaning of section 7117(a)(1) of the Statute.

The union also maintains that, even if there is some delay, the Authority has arbitrarily distinguished this proposal from proposals, held negotiable, that provide for "improvement periods" after notice of unacceptable performance and prior to proposed action. *See, e.g., New York State Nurses Association and VA Bronx Medical Center,* 30 F.L.R.A. 706 (1987) (*"New York State Nurses Association "*); *AFGE National Council of VA Locals and VA,* 29 F.L.R.A. 515 (1987) (*"National Council of VA Locals "*); *AFGE Local 3804 and FDIC, Chicago Region, Illinois,* 7 F.L.R.A. 217 (1982) (*"Local 3804 "*).

We concur with the Authority, however, that these cases did not concern proposals that mandate the length of the performance period management could consider in deciding whether to take an adverse personnel action. In *New York State Nurses Association,* for example, the Authority

held negotiable part of a proposal that provided that an employee would simply be given an opportunity to improve his performance prior to receiving an unsatisfactory or marginal rating. *See* 30 F.L.R.A. at 751. Likewise, in *National Council of VA Locals,* the Authority found negotiable a proposal that provided employees with a 90–day period to improve unsatisfactory performance. *See* 29 F.L.R.A. at 540. And in *Local 3804,* the Authority concluded that a proposal giving employees 90 days in which to improve their performance to an acceptable level was negotiable, because "[n]othing in * * * any part of this proposal speaks to the issue of *when* the agency may discipline an employee for unacceptable performance." 7 F.L.R.A. at 227 (emphasis added). It is clear that these rulings are not dispositive of the proposal at issue here. The distinction that the Authority has drawn between proposals permitting "improvement periods" and the instant proposal appears to be a reasonable one; we accordingly cannot conclude that the Authority's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *see* 5 U.S.C. §§ 7123(c), 706(2)(A).

### C. *Proposal 8*

■ The third proposal at issue, proposal 8, concerns the grade and step to which an employee facing disciplinary action may be demoted. It states that:

*Section 16.E.2.* If an employee is to be reduced in grade, the reduction shall be to the highest level for which the employee would be considered minimally acceptable. *If the alleged unacceptable performance is in the quantitative area, the demotion will be to the fifth step of the highest grade in which the quantitative performance would be considered acceptable unless the change is to a position of a type in which the employee formerly rendered satisfactory service in which case he will be paid the rate he would have received had his service in the lower grade been continuous.* [Only the italicized sentence is in dispute.]

The Authority found this proposal nonnegotiable on the ground that it would eliminate the agency's discretion to decide the appropriate grade for an employee whose performance was unacceptable. The Authority therefore concluded that the proposal interferes with management's right under section 7106(a)(2)(A) of the Statute to take action for unacceptable performance. *See* 29 F.L.R.A. at 1405. Accordingly, the Authority rejected the union's contention that the proposal is a negotiable "appropriate arrangement" for employees adversely affected by a performance-based action within the meaning of section 7106(b)(3) of the Statute. *See id.* at 1405–06.

The union challenges the Authority's finding that this proposal is not a negotiable "appropriate arrangement" under section 7106(b)(3) of the Statute. This court has held that a proposal that infringes on a management right is negotiable as an "appropriate arrangement" under section 7106(b)(3) of the Statute if it does not excessively interfere with management's rights. *See American Federation of Government Employees, Local 2782 v. FLRA,* 702 F.2d 1183, 1188 (D.C. Cir.1983); *see also American Federation of Government Employees, Local 1923 v. FLRA,* 819 F.2d 306, 308–09 (D.C.Cir.1987). We noted in *Local 2782,* however, that the "precise content [of the phrase] is for the Authority to determine in the first instance, based on its knowledgeable estimation of the competing practical needs of federal managers and union representatives." 702 F.2d at 1188.

We find in this case that the Authority reasonably determined that this proposal directly and excessively interferes with management's right to discipline under section 7106(a)(2)(A) of the Statute. *See* 29 F.L.R.A. at 1405. The proposal significantly impinges on the form of discipline to be imposed because it effectively imposes a "floor" below which the employee may not be demoted. The Authority therefore reasonably concluded that the proposal limits the agency's discretion to determine the appropriate grade and step for an employee whose performance is unacceptable. *Cf. International Plate Printers, Die Stamp-*

*ers and Engravers Union of North America, AFL–CIO, Local 2 and Department of the Treasury, Bureau of Engraving and Printing, Washington, D.C.,* 25 F.L.R.A. 113, 129–34 (1987) (finding nonnegotiable a proposal limiting the use of formal disciplinary measures—such as official reprimands, suspensions, and removals—only for "more serious offenses" or when informal disciplinary measures had not been effective). We therefore uphold the Authority's conclusion that the proposal excessively interferes with management's right to impose discipline under section 7106(a)(2)(A) and hence is not a negotiable "appropriate arrangement" within the meaning of section 7106(b)(3).

We note in passing, however, the Authority's apparent failure to discuss the relevant factors in determining whether a proposal qualifies as an "appropriate arrangement," *see NAGE Local R14–87 and Kansas Army National Guard,* 21 F.L.R.A. 24 (1985). The Authority responds in its brief before this court that it did in fact consider the relevant factors; it merely omitted specific mention of each and every factor. Although we hold in this case that the Authority's explanation passes muster under our deferential standard of review, the Authority should be mindful that "[w]e cannot defer to what we cannot perceive." *International Longshoremen's Association v. National Mediation Board,* 870 F.2d 733, 736 (D.C.Cir.1989).

### D. *Proposal 13*

■ The union's final challenge concerns a proposal that provides arrangements for employees who have performed satisfactorily under established performance standards, but who are assigned to work for another supervisor, receive a poor rating, and successfully challenge proposed disciplinary action based on that rating. Proposal 13 would give such an employee an opportunity to transfer to another supervisor and is intended to avoid possible recriminations that may follow when an employee successfully challenges a new supervisor's attempt to impose sanctions. It provides that:

*Section 17. Evidence.* If, during the five-year period prior to a proposed disciplinary action, the employee has neither been denied a within-grade increase nor received an overall performance rating of less than satisfactory, and the performance standards have not changed, this shall constitute evidence that the supervisor's application of the performance standards has changed. *Unless successfully rebutted, no disciplinary action will be taken and the employee will be given one opportunity to transfer with his or her art to another supervisor.* [Only the italicized sentence is in dispute.]

The Authority found this proposal nonnegotiable on the ground that it would permit an employee who prevails in a grievance concerning the application of performance standards to transfer to another supervisor at the employee's option and would therefore directly interfere with management's right to assign. *See* 29 F.L.R.A. at 1413–14 (citing 5 U.S.C. § 7106(a)(2)(A) (management's right to assign employees)). The Authority rejected the union's contention that the proposal was a negotiable "appropriate arrangement" for employees "adversely affected" by the exercise of management's right to review performance. *See id.* at 1414.

The Authority has consistently held that proposals compelling the selection of specific individuals for reassignment, either by seniority or employee choice, are outside the duty to bargain. *See, e.g., AFGE Council 214 and Department of the Air Force, Headquarters, Air Force Logistics Command, Wright–Patterson Air Force Base, Ohio,* 8 F.L.R.A. 425 (1982) (finding nonnegotiable a proposal setting forth criteria for reassignment based on seniority or employee preference). Because this proposal would have such an effect, we find that the ∠uthority reasonably determined that the proposal at issue would directly interfere with management's right to assign under section 7106(a)(2)(A) of the Statute.

The Authority also found that an employee who has successfully grieved has suffered no "adverse affect" within the meaning of section 7106(b)(3) of the Statute, noting that "[w]hile the Union argues that supervisor-employee friction may result from the supervisor's appraisal being overturned, this argument is mere speculation." *See* 29 F.L.R.A. at 1414 (citing *NAGE Local R14–87 and Kansas Army National Guard,* 21 F.L.R.A. 24, 31 (1986) ("*Kansas Army National Guard*")). The Authority therefore concluded that, because the proposal did not set forth an arrangement for "adversely affected" employees, it could not be a negotiable "appropriate arrangement" under section 7106(b)(3) of the Statute.

The union disagrees with the Authority's interpretation of the phrase "adversely affected," arguing that, even after an employee has successfully grieved, an employee is adversely affected simply by being required to remain with the same supervisor. Even if we were to agree with the union's interpretation of the Statute, however, we are obliged to defer to the Authority's "reasonably defensible" interpretation of the Statute. *See Overseas Educ. Ass'n v. FLRA,* 827 F.2d 814, 816 (D.C.Cir.1987) (citation omitted). Indeed, we find that the Authority's interpretation of "adversely affected" to exclude employees not demoted, reassigned, or removed is reasonable and not contradicted by clear statutory language or legislative intent. Accordingly, we affirm the Authority's determination that this proposal is not a negotiable "appropriate arrangement" under section 7106(b)(3) of the Statute.

### E. Proposal 3

■ The agency, in its petition for review, challenges the Authority's finding that proposal 3 is within its duty to bargain. The proposal states that:

*Section 3.I.* After the validations described in the immediately preceding subsection H. have been completed, *management shall publish in the Official Gazette the proposed performance appraisal plans and a POPA analysis thereof.* [Only the italicized portion is in dispute.]

The Authority determined that publication of the agency's proposed performance plans and the union's comments on the plans directly affects the employment rela-

tionship of bargaining unit employees and was therefore negotiable as a "condition of employment" within the meaning of section 7103(a)(14) of the Statute. *See* 29 F.L.R.A. at 1395–96.

■ Whether a given proposal pertains to a condition of employment depends on (1) whether the matter proposed pertains to bargaining unit employees; and (2) the nature and extent of the effect of the matter proposed on working conditions of those employees. *See Antilles Consolidated Educ. Ass'n and Antilles Consolidated School System,* 22 F.L.R.A. 235, 236–37 (1986) ("*Antilles*"). The parties agree that the *Antilles* test applies in this case even after *American Federation of Government Employees, Local 32 v. FLRA,* 853 F.2d 986 (D.C.Cir.1988), *on remand, AFGE Local 32 and OPM,* 33 F.L.R.A. 335 (1988).

In its decision, the Authority acknowledged that "the Patent Office's Official Gazette is used primarily to communicate technical patent and trademark information to patent practitioners," but noted that matters important to bargaining unit employees have also appeared in the publication and that the publication is widely distributed at the agency and easily available to bargaining unit employees. *See* 29 F.L. R.A. at 1395. On this basis, the Authority concluded that publication in the agency's Official Gazette would inform bargaining unit employees of performance appraisal plans and that therefore the matter proposed pertains to bargaining unit employees. *See id.* at 1395–96 (indirect effects on non-unit employees do not defeat a finding of negotiability). The Authority also held that, because "the development of performance appraisal plans directly affects the employment relationship of bargaining unit employees," the use of the Official Gazette for the proposed purpose directly affects a working condition of bargaining unit employees. *See id.* at 1396. Accordingly, under the *Antilles* test, the Authority concluded that the proposal was a "condition of employment" and therefore within the agency's duty to bargain. *See id.* at 1396.

We do not find this determination arbitrary or capricious. The agency argues that the focus of the proposal is publication in the Official Gazette, not communication

regarding proposed performance appraisal plans, and that therefore the bargaining unit employees are not the *principal* focus of the activity contained in the proposal, *see Antilles,* 22 F.L.R.A. at 237. We agree with the Authority, however, that the proposal's principal focus is communication of proposed performance appraisal plans to the employees and that, as such, the proposal directly affects bargaining unit employees. The intended audience of the Official Gazette is irrelevant to this determination, for the proposal does not become nonnegotiable simply because the Gazette is used primarily for another purpose. The agency's protestations regarding the unsuitability of the Gazette for the proposed purpose go to the merits of the proposal rather than to its negotiability in the first place. In any event, given two reasonable characterizations of the proposal (the agency's and the Authority's), we cannot conclude that the Authority's decision between them is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *see* 5 U.S.C. §§ 7123(c), 706(2)(A).

The agency also asserts that the method of communication proposed by the union relates neither to the agency's personnel policies nor to the working conditions of its employees. Again, however, we find that the Authority's reading of the proposal is reasonable. The agency does not dispute that publication of the performance plans directly affects the employment relationship, and we therefore hold that under the *Antilles* test the Authority properly determined that this proposal was a "condition of employment" subject to the agency's duty to bargain.

We have considered and rejected as unpersuasive the agency's other arguments. In affirming the Authority's finding of negotiability, we of course express no opinion on the merits of the proposal.

### III.

"It is well settled that our role in reviewing the FLRA's negotiability determinations is narrow." *Overseas Educ. Ass'n v. FLRA,* 858 F.2d 769, 771 (D.C.Cir.1988). Because we find the Authority's negotiability determinations "reasonably defensible,"

*Overseas Educ. Ass'n v. FLRA*, 827 F.2d 814, 816 (D.C.Cir.1987) (citation omitted), and not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *see* 5 U.S.C. §§ 7123(c), 706(2)(A); *National Treasury Employees Union v. FLRA*, 826 F.2d 114, 121 (D.C. Cir.1987), we uphold in full the challenged portions of the Authority's decision and order. Accordingly, the petitions for review are

*Denied.*