OVERSEAS EDUCATION ASSOCIATION, INCORPORATED (a unified state affiliate of the National Education Association), Petitioner,

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 856, Docket 91–4166.**

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1992.

Decided April 3, 1992.

Richard J. Hirn, Washington, D.C., for petitioner.

Pamela P. Johnson, Attorney (William E. Persina, Sol., William R. Tobey, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., of counsel), for respondent.

Before: VAN GRAAFEILAND, WALKER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

The United States Department of Defense Dependents Schools ("DODDS" or the "Agency") operates schools overseas for the children of military personnel who are assigned abroad. The Overseas Education Association ("OEA" or the "Union") represents teachers employed in those schools. The Union now petitions for review of a final order of the Federal Labor Relations Authority ("FLRA" or the "Authority") affirming DODDS' determination that certain OEA bargaining proposals were nonnegotiable because they "excessively interfered" with the Agency's "right to assign work" under the Federal Service Labor–Management Relations Act ("FSLMRA" or the "Act"), 5 U.S.C. § 7101 *et seq.* (1988). *See Overseas Educ. Ass'n & Dep't of Defense Dependents Schools,* 42 F.L.R.A. 197 (1991). OEA believes that the Authority's "excessive interference" test violates the Act and that its findings of nonnegotiability are arbitrary and capricious. We disagree and therefore deny the petition.

## BACKGROUND

OEA is the union for teachers at the Binictican Elementary School which DODDS operates for military dependents at the Subic Naval Base in the Philippines. To give parents an opportunity to meet faculty and familiarize themselves with the school's educational programs, the school has traditionally conducted an open house during the first five weeks of the school year.

The open house has usually been held in the early evening. For the 1988–89 academic year, however, the open house was held during the school day, on a trial basis, in the hope that more parents would attend during those hours. Unfortunately, fewer parents attended the open house that year. The Agency therefore decided to resume its prior practice of scheduling the open house in the evening and, over OEA's objections, the 1989–90 open house commenced at 6:00 p.m.

In subsequent contract negotiations with the Agency, the Union submitted four alternative proposals for the open house: (1) that it be held during the school day; (2) that it be held in the evening but students be dismissed for a half-day so teachers could prepare; (3) that it be held during the day pursuant to the guidelines established in the 1988–89 school year; or (4) that the open house be held during the first week of October, rather than in September when it

traditionally has been scheduled. The Agency refused to bargain at all about the scheduling of the open house, claiming the proposals were nonnegotiable because they impermissibly interfered with management's prerogatives under section 7106(a) of the FSLMRA.

The Union petitioned the FLRA for review of DODDS' refusal to negotiate, maintaining that the Act requires the Agency to bargain "appropriate arrangements for employees adversely affected" by the Agency's managerial decisions. *Id.* § 7106(b)(3). Following its own well-settled precedent, *see National Ass'n of Gov't Employees & Kansas Army Nat'l Guard*, 21 F.L.R.A. 24, 31–33 (1986) [hereinafter *KANG*], the FLRA applied the so-called "excessive interference" test to the dispute:

> In determining whether a proposal constitutes an appropriate arrangement under [section 7106(b)(3)], it is first necessary to determine whether the proposal is intended to be an arrangement for employees adversely affected by the exercise of a management right. If the proposal is intended to be an arrangement, the Authority next examines whether the arrangement is appropriate because it does not excessively interfere with the exercise of the management right.

42 F.L.R.A. at 202 (citing *KANG*, 21 F.L.R.A. at 31–33).

Each of OEA's proposals satisfied the first requirement of the excessive interference test that they be intended as arrangements for employees adversely affected by DODDS' open house policy. The Authority nevertheless dismissed OEA's petition because each of the Union's proposals was held to interfere excessively with the Agency's statutorily reserved prerogative to assign work, 5 U.S.C. § 7106(a). OEA now asks us to review the FLRA's decision, arguing principally that application of the excessive interference test violates the FSLMRA and is beyond the FLRA's jurisdiction. We disagree.

### DISCUSSION

■ Before reaching the merits, we are met by a challenge that we are without jurisdiction to consider the propriety of the excessive interference test because the Union did not raise this objection below. Given the FLRA's deeply rooted and well-documented acceptance of the excessive interference test, *see KANG*, 21 F.L.R.A. at 31; *National Treasury Employees Union, Chapter 26 & IRS*, 22 F.L.R.A. 314, 317 (1986); *American Fed'n of Gov't Employees, Local 3202 & U.S. Dep't of Health & Human Servs.*, 37 F.L.R.A. 350, 358 (1990); P. Broida, A Guide to Federal Labor Relations Authority Law & Practice 357–60 (4th ed. 1991); *see also Nuclear Regulatory Comm'n v. FLRA*, 895 F.2d 152, 155 (4th Cir.1990) ("FLRA determines whether a proposed 'arrangement' is 'appropriate' for bargaining by applying the 'excessive interference' test"), it would have been futile for OEA to challenge it. When a litigant comes up against so formidable a wall of precedent we have not required the party to make hopeless arguments for no other purpose than to preserve them on appeal. *Cf. Ahrens v. Bowen*, 852 F.2d 49, 54 (2d Cir.1988) (exhaustion of administrative remedies not required when further proceedings would have been futile). We therefore proceed to the merits of the Union's challenge to the excessive interference test.

The relevant portions of the FSLMRA provide:

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

. . . .

(2) in accordance with applicable laws—

. . . .

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

. . . .

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

. . . .

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

5 U.S.C. § 7106 (1988).

Subsection (a), therefore, reserves to management the right to assign work without having to bargain about it, while subsection (b)(3) is clearly "an *exception* to the otherwise governing management prerogative requirements of subsection (a)." *American Fed'n of Gov't Employees, Local 2782 v. FLRA*, 702 F.2d 1183, 1187 (D.C.Cir.1983) (Scalia, J.) (emphasis in original). The troublesome issue before us is how the two subsections mesh in actual practice.

Judge Scalia, then serving on the D.C. Circuit, suggested in *Local 2782* that "some arrangements may be inappropriate because they impinge upon management prerogatives *to an excessive degree.*" *Id.* at 1188 (emphasis in original). The FLRA took the hint, adopting this so-called excessive interference test. *See KANG*, 21 F.L.R.A. at 31, *followed in National Treasury Employees Union*, 22 F.L.R.A. at 317; *Congressional Research Employees Ass'n & Library of Congress*, 25 F.L.R.A. 306, 309 (1987); *American Fed'n of Gov't Employees, Local 3302 & U.S. Dep't of Health & Human Servs.*, 37 F.L.R.A. 350, 358 (1990).

██ The test has been applied by the FLRA in two steps. The Authority determines, first of all, whether a union's proposal is intended to be an "arrangement[ ] for employees adversely affected by the exercise" of a management right. 5 U.S.C. § 7106(b)(3). If not, then the union's proposal falls within the wide net of subsection (a)'s management prerogatives and, therefore, is nonnegotiable. *See Patent Office Professional Ass'n v. FLRA*, 873 F.2d 1485, 1492 (D.C.Cir.1989); *Overseas Educ. Ass'n & Dep't of Defense Dependents Schools*, 29 F.L.R.A. 485, 496 (1987).

If, on the other hand, the union's proposal falls within subsection (b)(3), as the proposals in this case concededly did, then the Authority next determines "whether the arrangement is appropriate because it does not excessively interfere with the exercise of [a] management right." *Overseas Educ. Ass'n*, 42 F.L.R.A. at 202. This is a more delicate task, requiring that "[t]he competing practical needs of employees and managers [be] weighed in ... light of various factors, so as to determine whether, on balance, the impact of the proposal on management's rights is excessive when compared to the benefits afforded employees." *Nuclear Regulatory Comm'n v. FLRA*, 895 F.2d 152, 155 (4th Cir.1990) (citing *KANG*, 21 F.L.R.A. at 32). The question before us, therefore, is whether this two-step process followed by the FLRA violates the Act. We think not.

Our review of the FLRA's construction of the very statute that it administers is cabined by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Where, as here, "Congress has not directly addressed the precise question at issue, .... the question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (footnote omitted); *see also Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) ("reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act"). The FLRA, in particular, is " 'entitled to considerable deference when it exercises its "special function of applying the general provisions of the [FSLMRA] to the complexities" of federal labor relations.' " *West Point Elementary Sch. Teachers Ass'n v. FLRA*, 855 F.2d 936, 939 (2d Cir.1988) (brackets in original) (quoting *Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 97, 104 S.Ct. at 444 (quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963))).

The FSLMRA and its legislative history are silent on the extent to which subsection (b), by requiring agencies to negotiate "appropriate arrangements", permits employees adversely affected to limit the exercise of management rights enumerated in subsection (a). The Act's use of "the broad

limiting word 'appropriate,'" *Local 2782,* 702 F.2d at 1187, however, suggests that it "permits the Authority to place needful limitations upon the sweep of the exception." *Id.* The FLRA's excessive interference standard properly adds flesh to the term "appropriate" by employing a test that balances the competing needs of employees and managers. *See Patent Office Professional Ass'n,* 873 F.2d at 1491 ("precise content [of 'appropriate arrangement'] is for the Authority to determine in the first instance") (quotations omitted); *see also IRS v. FLRA,* 717 F.2d 1174, 1176 (7th Cir.1983) (FSLMRA "balances the right of public employees to organize and bargain collectively with the need of federal management to exercise exclusive authority to render those decisions necessary to insure effective public services"). This approach also comports with the common meaning of "appropriate" and therefore is consistent with the rule that Congress is presumed to "use[ ] common words in their popular meaning . . . ." Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 536 (1947); *see also Palestine Info. Office v. Shultz,* 853 F.2d 932, 938 (D.C.Cir.1988); 2A N. Singer, Sutherland Statutory Construction § 46.01 (5th ed. 1992).

The Union would have us ignore or simply read the word "appropriate" out of section 7106(b). Such an interpretation would frustrate congressional intent and contravene fundamental precepts of statutory construction. First, ignoring the Act's limitation on the scope of subsection (b)'s exception could eviscerate subsection (a)'s explicit reservation of management rights. Second, blithely disregarding Congress's use of a word "violates the established principle that a court should give effect, if possible, to every clause and word of a statute." *Moskal v. United States,* —— U.S. ——, 111 S.Ct. 461, 466, 112 L.Ed.2d 449 (1990) (quotations omitted); *see also* 2A Sutherland Statutory Construction, *supra,* at § 46.06. We therefore join the other circuits that have sanctioned the excessive interference test. *See Nuclear Regulatory Comm'n,* 895 F.2d at 155–56; *American Fed'n of Gov't Employees, Local 1923*

*v. FLRA,* 819 F.2d 306, 310 (D.C.Cir.1987); *Local 2782,* 702 F.2d at 1188, *cited with approval in Horner v. Bell,* 825 F.2d 382, 389 (Fed.Cir.1987); *United States Air Force v. FLRA,* 727 F.2d 1502, 1504 (11th Cir.1984).

That said, we turn to the Union's alternative argument that the FLRA's application of the test in this case was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A) (1988). We have held in similar contexts that the establishment of a school calendar is nonnegotiable because " 'the right to determine what work will be done, and by whom and when it is to be done, is at the very core of successful management of the employer's business.'" *West Point Elementary Sch. Teachers Ass'n,* 855 F.2d at 942 (quoting *National Treasury Employees Union v. FLRA,* 691 F.2d 553, 563 (D.C.Cir.1982)). So too, each of the Union's proposals with respect to the scheduling of the open house interferes sufficiently with management's statutory right to assign work, *see* 5 U.S.C. § 7106(a)(2)(B); *West Point Elementary Sch. Teachers Ass'n,* 855 F.2d at 942; *see also, Fort Knox Teachers Ass'n & Fort Knox Dependents Schools,* 19 F.L.R.A. 878, 883–84 (1985), that the FLRA's application of the excessive interference test was neither arbitrary nor capricious.

## CONCLUSION

In sum, we hold that the FLRA's use of the excessive interference test is consistent with the Act and that its application of the test in this case was neither arbitrary nor capricious. Accordingly, the Union's petition is denied.