Donald **ZATZ**, Benjamin **Zatz**, Joseph **Guzman** and David **Andress**, as Executor of the Estate of Homer Henry, Petitioners,

v.

**UNITED STATES of America and Surface Transportation Board, Respondents,**

Union Pacific Corporation, Union Pacific Railroad Company, Southern Pacific Rail Corporation and Southern Pacific Transportation Company, Intervenors.

Docket No. 97–4287.

United States Court of Appeals, Second Circuit.

Argued June 2, 1998.

Decided July 9, 1998.

---

Douglas A. Kellner, Kellner Chehebar & Deveney, New York City (John Patrick Deveney, Kellner Chehebar & Deveney, New York City, John F. McHugh, McHugh & Sherman, New York City, Fritz R. Kahn, Washington, DC, of counsel), for Petitioners.

Louis Mackall, V, Office of the General Counsel, Surface Transportation Board, Washington, DC (Henri F. Rush, General Counsel, Surface Transportation Board, Washington, DC, Joel I. Klein, Assistant Attorney General, Robert B. Nicholson, John P. Fonte, Department of Justice, Washington, DC, of counsel), for Respondents.

Timothy C. Hester, Covington & Burling, Washington, DC (Arvid E. Roach, II, Covington & Burling, Washington, DC, of counsel), for Intervenors.

Before: MESKILL and CABRANES, Circuit Judges, and NICKERSON, * District Judge.

Per Curiam:

Petitioners are four minority shareholders who own the 61 shares of common stock of the St. Louis Southwestern Railway Company (SSW) that are publicly held. In the decision we are asked to review, the Board determined that $6,800 per share was a just and reasonable price to be paid to petitioners as part of the proposed merger of SSW into SSW Merger Corp. (which was merely one stage of the larger merger of Union Pacific Corporation (UP) and Southern Pacific Rail Corporation (SP)). Petitioners challenge this

---

* Honorable Eugene H. Nickerson, United States District Judge for the Eastern District of New York, sitting by designation.

decision on essentially three grounds: (1) that the Board lacked jurisdiction to determine the fair value of SSW's minority shares; (2) that the Board's determination of the fair value of the shares was not supported by substantial evidence; and (3) that the Board's procedures did not provide them with adequate time or opportunity to respond to UP/SP's valuation of the shares and did not comport with due process. These arguments are without merit.

■ First, petitioners failed to argue before the Board that it lacked jurisdiction to determine the value of·the minority shares. To the contrary, petitioners reminded the Board of its responsibility to ensure that "their interests as minority shareholders ... are protected, as. *Schwabacher v. United States,* 334 U.S. 182, 201, 68 S.Ct. 958, 92 L.Ed. 1305 (1948), obliges this Board to safeguard." Despite having relied on *Schwabacher* to argue that the Board was compelled to protect their interests as minority shareholders, petitioners now reverse course and argue that the Board was without jurisdiction to determine the fair value of the shares, and that *Schwabacher* is not controlling.

By failing to present their jurisdictional argument to the Board—indeed, by arguing the contrary position before the Board—petitioners have waived their right to present it here for the first time. *See United Transp. Union v. Surface Transp. Board,* 114 F.3d 1242, 1244–45 (D.C.Cir.1997) ("[T]he Unions concede they did not make a jurisdictional argument until this appeal.... The Unions are therefore precluded from raising their jurisdictional argument now because claims not presented to the agency may not be made for the first time to a reviewing court.... [Unlike arguments regarding a district court's jurisdiction, a]rguments as to agency jurisdiction ... cannot be raised for the first time on appeal except in the very limited case, not presented here, where the challenge is to the very composition or constitution of an agency." (internal quotation marks and citations omitted)); *Mitchell v. Christopher,* 996 F.2d 375, 378–79 (D.C.Cir. 1993) ("The Secretary cannot justify raising an argument for the first time on review

merely by contending that it goes to the Board's jurisdiction. A defect in an agency's jurisdiction, after all, does not affect the subject matter jurisdiction of the district court.... [T]here are precious few cases involving interpretation of statutes authorizing agency action in which our review is not aided by the agency's statutory construction—even when the issue can be properly characterized as going to an agency's jurisdiction (which itself is often disputed)."). Nor can petitioners avail themselves of the "exceptional circumstances" or "futility" exceptions that we have recognized may excuse a party's failure to raise an argument before an administrative agency. *See Overseas Educ. Ass'n v. F.L.R.A.,* 961 F.2d 36, 38 (2d Cir.1992) (futility); *Railway Labor Executives' Ass'n v. United States,* 791 F.2d 994, 1000 (2d Cir.1986) (exceptional circumstances).

■ In any event, even if we could reach petitioners' argument that the Board lacked jurisdiction to determine the fair value of their shares, the argument would fail on the merits. The Board has exclusive authority to approve and authorize a proposed railroad merger or control transaction "when it finds the transaction is consistent with the public interest." 49 U.S.C. § 11324(c); *see id.* § 11321(a) (exclusivity provision). In *Schwabacher,* the Supreme Court construed the statutory predecessor of § 11324(c) (former 49 U.S.C. § 5(2)(b)) to give the Interstate Commerce Commission (ICC) (the predecessor of the Board) the authority and obligation to determine "just and reasonable" rates of compensation to minority shareholders. Petitioners argue that the Board was stripped of this authority by changes in the wording of the statute made by the 1978 recodification of the Interstate Commerce Act, Pub.L. No. 95–473, § 3(a), 92 Stat. 1337, 1466 (1978). However, it is clear that the 1978 recodification "may not be construed as making a substantive change in the laws replaced." *Burlington Northern R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 457 n. 1, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) (quoting Pub.L. No. 95–473, § 3(a), 93 Stat. at 1466); *accord Central Freight Lines v. I.C.C.,* 899 F.2d 413, 423 (5th Cir.1990).

Petitioners also argue that the Board was stripped of its authority to determine the fair price for minority shares by the ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995) (ICCTA), which transferred certain functions of the ICC to the newly created Board. Unlike the recodification of 1978, the ICCTA did make substantive changes to the law. Most significantly for present purposes, the ICCTA repealed the provision that had given the ICC authority to approve the issuance of securities by railroads and the assumption of liabilities resulting therefrom, former 49 U.S.C. § 11301. *Schwabacher* had relied on the predecessor to this provision (former 49 U.S.C. § 20a(2)), along with the predecessor to 49 U.S.C. § 11324(c) (former 49 U.S.C. § 5(2)(b)), to conclude that the ICC had authority to determine the value of minority shares. *See* 334 U.S. at 193–98, 68 S.Ct. 958. Because *Schwabacher* relied on both of these provisions to conclude that the ICC had the authority and the obligation to determine the value of minority shares, it is unlikely that the Board was stripped of this authority by the ICCTA's repeal of former 49 U.S.C. § 20a(2). The ICCTA did not clearly express any intention to modify the "public interest" analysis of § 11324(c) and its predecessors, under which the ICC had for decades, pursuant to *Schwabacher*, included an assessment of the compensation due minority shareholders. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974) ("[C]ongressional failure to revise or repeal" a "longstanding interpretation placed on a statute by an agency charged with its administration" is "persuasive evidence that the [agency] interpretation is the one intended by Congress."); *see also* H.R.Rep. No. 104–311, at 106 (1995), *reprinted in* 1995 U.S.Code, Cong. & Admin. News 793, 818 (Under section 11321, the ICCTA reenacted "existing law as to the scope of the agency's authority over approval and implementation of mergers and other control transactions, including the preemptive effect of the Federal agency's approval on otherwise applicable law from any source."). More importantly, the Board's interpretation of its jurisdiction to determine the fair value of minority shares is a "reasonable interpretation" of its governing statute that, in the absence of clear congressional intent to the contrary, is binding on this Court. *See Reiter v. Cooper*, 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (citing *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

Petitioners' challenge to the Board's valuation of their minority shares is unpersuasive. The Board's conclusion resulting from this highly fact-bound inquiry that "requires a high level of technical expertise" is entitled to substantial deference. *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (internal quotation marks and citation omitted). The Board was well within its discretion in giving substantial weight to the detailed valuation analysis submitted by CS First Boston on behalf of UP/SP and in rejecting the valuation analysis submitted by petitioners. That valuation relied on another railroad's offer to buy SSW, an offer that was not firm and that included substantial non-SSW assets. Equally without merit is petitioners' argument that the Board's procedures did not give an adequate opportunity for petitioners to respond to UP/SP's valuation, thereby denying them due process. Agencies are given wide discretion to determine the proper procedures for discharging their responsibilities, *see Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 524, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). The Board did not abuse its discretion here. We find no basis for concluding that petitioners' due process rights were violated.

We have considered all of petitioners' arguments and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the petition for review is denied.